SCHUMAKER et ux, Respondents v. IVERS, Appellant

(238 N.W.2d 284)

(File No. 11449. Opinion filed January 27, 1976)

**Tidball, Kemnitz, Axtmann & Lovald,** Pierre, for defendant and appellant.

**Charles Poches, Jr.,** Fort Pierre, for plaintiffs and respondents.

WOLLMAN, Justice.

Defendant appeals from a judgment ordering him to repay to plaintiffs the purchase price of a certain electric organ. We affirm.

On November 30, 1972, plaintiffs went to defendant's music store for the purpose of looking at electric organs. Plaintiffs look-

ed at several models and discussed the matter with defendant, who recommended the organ in question, described in the testimony as a Story Clark Magi model. Defendant suggested that plaintiffs permit him to deliver the organ to their home on a trial basis. Plaintiffs agreed that defendant could do so, and the organ was delivered to plaintiffs' home on December 7, 1972. Mrs. Schumaker played the organ on the day it was delivered and noticed nothing unusual.

On December 11, 1972, Mrs. Schumaker went to defendant's store and paid in full the purchase price of the organ in the amount of $1,119.71. According to her testimony, she asked defendant about the warranty and service on the organ and was assured by defendant that it would all be taken care of and that he had a man who serviced organs.

Approximately two weeks after the organ was delivered, one of the bass pedals failed to play. Shortly thereafter another bass pedal also failed to play, as did two keys on the keyboard. Mrs. Schumaker called defendant on or about December 27, 1972, and told him about the problems she had been having with the organ. Defendant said that he would send out a serviceman. Nothing was done, however, until March 13, 1973, when defendant and his serviceman came to plaintiffs' home and worked on the organ.[1] Following their visit—and here the record is rather vague with regard to dates—plaintiffs again experienced difficulty with the organ in that one key in every octave in both keyboards failed to play. Mrs. Schumaker called defendant on May 11, 1973, and told him that she was still having difficulty with the organ and that she was unhappy with it and wanted a refund of the purchase price. Defendant and his serviceman came to plaintiffs' home and after some discussion, during which defendant refused to accede to Mrs. Schumaker's request that he take back the organ and refund the purchase price, plaintiffs agreed to permit defendant to bring out a replacement organ on the condition that if it did not work defendant would take it back and re-

---

1. Defendant testified that the first complaint was received in mid-February of 1973 and that he and his serviceman went to plaintiffs' home "within a couple of days" thereafter. There were other sharp disputes in the testimony. It was for the trial court, of course, to weigh the testimony and determine the facts.

fund the purchase price of the first organ. On or about May 22, 1973, defendant brought out a replacement organ. Shortly thereafter the rhythm system on the second organ began to malfunction. In response to plaintiffs' call, defendant's serviceman attempted to repair the organ on several occasions during the period from May 24 to June 1, 1973, but was unable to remedy the problem. During his last service call the serviceman removed the rhythm system component from the organ. Following this visit the lower keyboard failed to play.

Sometime after June 1, 1973, defendant's employees attempted to return the original organ, which defendant claimed had been put into proper operating condition, to plaintiffs' home but were prevented from doing so by plaintiffs. Plaintiffs sought the advice of an attorney, who wrote to defendant on or about June 15, 1973, regarding the organ.[2] On August 3, 1973, plaintiffs filed suit against defendant in the nature of a rescission action praying for the return of the purchase price of the organ.

Although plaintiffs styled their complaint and tried the case on the theory of a rescission action pursuant to SDCL 21-12 and 53-11-2, the trial court correctly elected to treat the action as one based upon revocation of acceptance pursuant to SDCL 57-7-20 (U.C.C. § 2-608(1)). Moeller Manufacturing, Inc. v. Mattis, 33 Colo.App. 300, 519 P.2d 1218; Performance Motors, Inc. v. Allen, 280 N.C. 385, 186 S.E.2d 161; Lanners v. Whitney, 247 Or. 223, 428 P.2d 398.

SDCL 57-7-20 (U.C.C. § 2-608(1)) provides that:

"The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(1) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

---

2. Plaintiffs' original attorney did not represent them at trial or on appeal. The letter does not appear in the settled record, although defendant acknowledged receipt thereof, inasmuch as plaintiffs' present counsel did not offer it.

(2) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

SDCL 57-7-21 (U.C.C. § 2-608(2)) provides that:

"Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."

A buyer who has rightfully revoked acceptance may recover the purchase price paid. SDCL 57-8-28 (U.C.C. § 2-711(1)).

Because we conclude that the trial court correctly treated this action as one based upon revocation of acceptance under the Uniform Commercial Code, we need not decide whether the provisions of SDCL 57-7-20 constitute the exclusive remedy available to a buyer who elects to return the goods and seek a refund of the purchase price. See J. White & R. Summers, Handbook of the Law under the Uniform Commercial Code § 8-1 (1972).

Comment 1 to U.C.C. § 2-608 states in part that:

" * * * The section no longer speaks of 'rescission,' a term capable of ambiguous application either to transfer of title to the goods or to the contract of sale and susceptible also of confusion with cancellation for cause of an executed or executory portion of the contract. The remedy under this section is instead referred to simply as 'revocation of acceptance' of goods tendered under a contract for sale and involves no suggestion of 'election' of any sort."

The term "rescission" should be carefully delimited in cases involving cases of the Uniform Commercial Code.

"A final introductory word should be devoted to that ambiguous action called 'rescission.' Some use the word rescission to encompass what the Code defines as a rejection or revocation of acceptance; others use it to mean simply the buyer's act in returning the goods; still others use it to cover the buyer's cancellation of the executory terms of the contract; and finally some might call it the buyer's cause of action for fraud (including presumably the return of the goods, cancellation of the executory portion of the contract and the return of money paid). It is the apparent intention of the draftsmen to restrict the word rescission to a rather limited number of cases, those involving a mistake or in which the seller has committed fraud, duress, or the like. * * * If the seller has not committed mistake, fraud, or the like, we believe that the Code preempts the field and that the buyer's only rights to return the goods are those stated in Article Two." J. White & R. Summers, Handbook, *supra*, § 8-1, at 248 (1972). (footnotes omitted)

As Professors White and Summers have pointed out,

"The term 'revocation of acceptance' is new, and the courts have not taken to it. What the draftsmen would call revocation of acceptance and would analyze under 2-608, the courts are likely to define as rescission or rejection and to discuss without reference to the provisions of 2-608. * * * " J. White & R. Summers, Handbook, *supra*, § 8-3, at 255.

■ Considering the evidence in the light most favorable to the trial court's decision, we believe that the trial court was correct in holding that the defects in the organ substantially impaired its value to plaintiffs.

Comment 2 to U.C.C. § 2-608 states that:

"Revocation of acceptance is possible only where the non-conformity substantially impairs the value of the goods to the buyer. For this purpose the test is not

what the seller had reason to know at the time of contracting; the question is whether the non-conformity is such as will in fact cause a substantial impairment of value to the buyer though the seller had no advance knowledge as to the buyer's particular circumstances."

In their analysis of U.C.C. § 2-608(2) and of Comment 2, Professors White and Summers state in part that:

" * * * Why a buyer should be permitted to measure the seller's tender by such subjective standards is not clear. Insofar as we are able to tell, no appellate case has yet squarely faced a situation in which the defect would be such as to cause only an insubstantial impairment on an objective basis. Doubtless it is an unusual case in which one will be unable to convince a court or a jury that the goods are substantially conforming on an objective basis but will be able to convince the court or jury that they are substantially defective to a particular plaintiff. Perhaps we are unduly cynical about the powers of fine discrimination of courts and juries, but we suspect that a single standard of objective 'substantial nonconformity' will cover 99.44% of all rejection and revocation cases." J. White & R. Summers, Handbook, *supra*, § 8-3, at 260. (footnotes omitted)

What constitutes substantial impairment is, of course, a factual determination to be made by the trier of fact. Hays Merchandise, Inc. v. Dewey, 78 Wash.2d 343, 474 P.2d 270. Although the term "substantial impairment" may not be susceptible of being precisely defined, surely it connotes more than merely minor, easily repairable defects in the goods. As was stated by one court:

"A buyer does not sustain his burden of proving that his revocation of acceptance was justified by his testimony that the machine was returned because it was 'unsatisfactory,' as that term is held to be too vague. * * * Similarly, because of the requirement of showing 'substantial impairment' under § 2-608 there can be no

revocation of acceptance merely by proving that there were defects without showing that they 'substantially impair the value of the [contract].'" Lynx, Inc. v. Ordnance Products, Inc., 273 Md. 1, 16, 327 A.2d 502, 513. (citations omitted)

In holding that the buyer of two valve testing machines had failed to prove that the alleged nonconformity in the machines substantially impaired the value of the machines to him, the Supreme Judicial Court of Massachusetts stated that:

"* * * [W]e are not directed to any testimony showing how and to what extent failure to meet the specification impaired the value of the machine. There was vague testimony that a valve set too low might become a nuisance and indirectly might bear on safety, and that if set too high a valve might fail to function as a safety device to protect water heaters; but there was no showing of the bearing of the particular specification on these possibilities or on the manufacture or marketing of valves. On this issue the buyer had the burden of proof, and it failed to sustain that burden." Axion Corp. v. G.D.C. Leasing Corp., 359 Mass. 474, 480, 269 N.E.2d 664, 668.

For cases holding that substantial impairment of value had been proved, see, e.g., Tiger Motor Co., Inc. v. McMurtry, 284 Ala. 283, 224 So.2d 638; Stroh v. American Recreation & Mobile Home Corp., Colo.App., 530 P.2d 989; Regents v. Pacific Pump & Supply, Inc., Colo.App., 528 P.2d 941; Irrigation Motor & Pump Co. v. Belcher, 29 Colo.App. 343, 483 P.2d 980; Campbell v. Pollack, 101 R.I. 223, 221 A.2d 615; Hays Merchandise Inc. v. Dewey, supra. See Annot., 17 A.L.R.3d 1010, § 40.

■ We conclude that plaintiffs satisfied the burden of demonstrating that the defects in the organ substantially impaired its value to them. Although there were conflicts in the testimony concerning the exact nature of the defects in the organ, it was for the trial court to weigh this testimony and determine whether the defects were of such magnitude as to warrant

plaintiffs in revoking their acceptance of the organ.

■ Likewise, we conclude that the trial court was correct in ruling that plaintiffs had notified defendants within a reasonable time after learning of the defects in the organ that they intended to revoke their acceptance and to ask for a refund of the purchase price. SDCL 57-1-14 (U.C.C. § 1-204) provides in part that: " * * * What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." Comment 4 to U.C.C. § 2-608(2) (SDCL 57-7-21) states in part that:

> "Subsection (2) requires notification of revocation of acceptance within a reasonable time after discovery of the grounds for such revocation. Since this remedy will be generally resorted to only after attempts at adjustment have failed, the reasonable time period should extend in most cases beyond the time in which notification of breach must be given, beyond the time for discovery of non-conformity after acceptance and beyond the time for rejection after tender. * * * "

In discussing this section of the Uniform Commercial Code, Professors White and Summers state that:

> " * * * The policies which support a requirement telling the buyer to act with reasonable speed in notifying the seller are not mysterious. The obvious policies behind the notice provisions are to give the seller an opportunity to cure, to permit seller to assist the buyer in minimizing the buyer's losses, and to return the goods to seller early, before they have substantially depreciated. If the seller can step in and cure the difficulty and so save the sale and prevent several months' lost profit that the buyer might otherwise suffer, the policy has been fulfilled. Even if seller's inspection discloses that the goods are defective and he agrees to take them back, the entire loss from the transaction may be minimized by early action, because the seller may be able to resell the goods to another party shortly after the sale at a higher price than the goods would command after they

had depreciated over a period of time." J. White & R. Summers, Handbook, *supra*, § 8-3, at 260.

We think that the instant case is similar to the fact situation that existed in the case of Irrigation Motor & Pump Co. v. Belcher, supra. There, the seller installed an irrigation unit in January of 1968. The buyer notified the seller that there were numerous mechanical defects in the machine and the seller made several unsuccessful attempts to repair the machine during the following months. The machine never worked properly, however, with the result that the buyer was unable to use it to irrigate his crop. On July 27, 1968, the buyer notified the seller that he was rescinding the contract and then started an action to recover the money he had paid on the purchase price. The court treated the action as one for revocation of acceptance. In holding that the revocation of acceptance occurred within a reasonable time, the court stated that:

> " * * * There is no question here but that there was adequate and timely notice of the breach. The seller was contacted immediately after the machine was installed and told that it was not working. The seller thereafter attempted to repair the machine. Seller argues, however, that the notice of revocation of acceptance on July 27, 1968, was not timely because buyer had known for some time prior to that date of the nonconformity of the goods. * * * The question of reasonableness is a question of fact and is to be measured by all of the circumstances of the case. * * * Here, the buyer gave the seller an opportunity to repair the machine and withheld his revocation of acceptance until it became apparent that seller could not or would not perform its contract. Under the circumstances of this case, the delay in the notice in no way prejudiced the seller and the delay was not unreasonable." 29 Colo.App. 343, 347, 483 P.2d 980, 982.

Defendant contends that because the record reveals that he at all times stood ready to honor the one-year free parts and service warranty on the organ, plaintiffs should not have been

permitted to summarily refuse him the opportunity to do so by revoking their acceptance of the organ. In view of the numerous unsuccessful attempts by defendant to satisfactorily repair the original organ, we conclude that the trial court did not err in holding that plaintiffs had rightfully revoked their acceptance. Tiger Motor Co., Inc. v. McMurtry, supra.

As far as the adequacy of the notice is concerned, defendant acknowledged that Mrs. Schumaker had told him that plaintiffs wanted him to take the organ back and refund the purchase price. If this revocation of acceptance was in any way waived by plaintiffs' accepting delivery of the second organ, such waiver was clearly based upon the condition that the replacement organ would operate satisfactorily, a condition that failed to materialize. Plaintiffs moved promptly to send notice through their legal counsel shortly after the second organ became completely inoperable.

Defendant alleges that certain of the trial court's findings of fact and conclusions of law are unsupported by the evidence. Defendant is correct that there was no evidence to support the trial court's finding that defendant's employees had made certain admissions concerning the condition of the original organ at the time they attempted to redeliver it to plaintiffs' home. Because this particular finding is not material to our disposition of the case, however, its inclusion in the record is not prejudicial to defendant.

The judgment is affirmed.

All the Justices concur.