## No. 48,138

Norris V. McGilbray, *Appellant,* v. Scholfield Winnebago, Inc., *Appellee.*

(561 P. 2d 832)

Opinion filed March 5, 1977.

*David W. Dewey,* of Wichita, argued the cause, and *Philip D. Lunt,* also of Wichita, was with him on the brief for the appellant.

*Everett C. Fettis,* of Fettis, Quinn and Beasley, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Miller, J.: This is a "revocation of acceptance" case under the Uniform Commercial Code. Suit was brought by the purchaser of a Winnebago motor home against the seller to enforce a written revocation of acceptance, pursuant to K. S. A. 84-2-608. The seller prevailed in the trial court, and the purchaser appeals.

The plaintiff, Norris V. McGilbray, purchased a Winnebago motor vehicle (WMV) from defendant Scholfield Winnebago, Inc. and took delivery at Wichita on January 2, 1973. He bought the vehicle for use on family trips and vacations, and to travel to various band engagements. He hauled band equipment in it, and used the vehicle as a dressing room and as a place to rest between performances.

Sixteen different things required repair or attention during the first year. These varied in seriousness from items which required but minor adjustment to the replacement of a water pump and repairs to the air conditioner, refrigerator, ignition wiring and the power plant. The warranty was honored by Scholfield and effective repairs were made as requested. The plaintiff testified that the vehicle was in the garage for repairs two weeks out of every month and that this substantially impaired its value to him. In support of this claim he submitted an itemized list showing the repairs made and the time required for each one. This shows that repairs took a total of 19 weeks. However, it is apparent that the time for repairs includes time it took the dealer to order, receive and install replacement parts, such as replacement seat cover (two weeks) and replacement screens (one month). From the evidence it appears that the vehicle was serviceable and was used during much of this time. Plaintiff lists five weeks to repair the air conditioner, but says he took three trips in the vehicle during that time. Additionally, we note that during the 59-day period from July 18 to September 15, the plaintiff charges the defendant took a total of 79 days to make four different repairs, and the record indicates that during that time plaintiff took at least one, and possibly two trips, and used the vehicle during that time.

The plaintiff conferred with a representative of Winnebago Industries, the manufacturer, in September and on November 20, 1973, and requested that Winnebago extend the warranty for another ten months. Winnebago refused to do so. Plaintiff testified that he was quite willing to keep the vehicle and accept it as being satisfactory if Winnebago would have extended its warranty. After the conference with Winnebago's representative the plaintiff had but one additional problem of any consequence with the vehicle, and that was a leaking rear wheel seal. Plaintiff's total out-of-pocket expense for repairs, incurred while he was away from Wichita, was $20.

On December 21, 1973, counsel for the plaintiff wrote to the defendant, revoking "McGilbray's acceptance of the WMV because of non-conformities in the WMV which were not apparent and could not be discovered at the time of delivery." Thereafter the vehicle was returned to the defendant. The defendant accepted the vehicle and treated the surrender not as a revocation but as a voluntary repossession. The defendant, an endorser with recourse, paid the balance due on plaintiff's note, and then resold

the vehicle. The motor home was "in immaculate shape" when it was returned to Scholfield; the only repair required was the replacement of a rear wheel seal. The parties stipulated that the new owner, who purchased the vehicle from the defendant after its return, had no trouble with it. At the time of surrender the defendant had owned the vehicle for 50 weeks and had driven it 8700 miles. The original purchase price of the motor home was approximately $10,200. The vehicle was resold, after surrender, for approximately $6700.

The trial court made extensive findings of fact and conclusions of law, the pertinent portions of which are as follows:

"Plaintiff experienced difficulties with the motor home . . . commencing in January of 1973 and continuing at least into September of 1973. On some occasions, Plaintiff returned the vehicle to Defendant for repair, which was either accomplished by Defendant or other repair shops to which it was assigned by Defendant. Other problems were corrected by Plaintiff himself, *i. e.*, thawing frozen pipes, installation of screws in seat, tightening faucets, etc. Some of the problems with the vehicle were more serious such as a malfunctioning air conditioner, a malfunctioning refrigerator, and some faulty ignition wiring beneath the dash.

"Plaintiff made the monthly payments to Union National Bank . . . and kept the account current. He also used the motor home notwithstanding the problems he experienced with it.

"In September and November of 1973, Plaintiff met with representatives of Winnebago Industries and Defendant and voiced his dissatisfaction with the mechanical problems and servicing that the vehicle had required. . . . [T]he evidence does not disclose that Defendant ever refused service under the warranties of any defect, when repair of a defect was requested by Plaintiff.

"On December 21, 1973, the Plaintiff, through his counsel, served a written revocation of acceptance, pursuant to 84-2-608 of the Uniform Commercial Code upon the Defendant, and surrendered the vehicle back to the Defendant. Defendant accepted the surrender of the vehicle, but did not acknowledge it as a justifiable revocation of acceptance by Plaintiff, but as a voluntary repossession. Thereafter, Defendant, under Recourse Agreement with the Union National Bank, paid that institution the balance due on the bank loan to Plaintiff for the purchase of the vehicle.

"At the time the vehicle was surrendered back to Defendant by Plaintiff, the odometer showed that it had been driven approximately eighty-seven hundred miles. Defendant thereafter resold said vehicle to another individual for [about $6,700] . . . The evidence discloses that the new owner of the Winnebago Motor home has not complained of any defect, or expressed any dissatisfaction with such unit.

"It is Plaintiff's contention that Plaintiff, under provisions of 84-2-608 of the U. C. C. is entitled to recover from Defendant the full amount of his down payment, including the reasonable value of his trade-in, together with the full amount of his monthly payments to Union National Bank, as well as

incidental damages, such as a $15.00 tow-in charge, $5.00 labor charge in the Ozarks, etc., from the Defendant, and has brought this action seeking judgment in the amount of $6,000.00.

"It is the contention of the Defendant that the Defendant complied with the terms of the warranty and performed such repairs as were necessary, and that the vehicle, like all new vehicles, requires corrective service during the warranty period, that it was not defective, and that Plaintiff is entitled to recover nothing from Defendant . . .

"It is Plaintiff's theory that Section (1) of 84-2-608 provides that a buyer may revoke his acceptance of merchandise whose nonconformity substantially impairs its value *to him*, which is a subjective rather than an objective test, and that it is immaterial if a defect would cause no impairment of value to an average buyer or to a reasonable man, but that the criteria is whether the defect impairs its value to the particular buyer.

### CONCLUSIONS OF LAW

"It appears clear from the U. C. C. comment in paragraph number 2 that Section (2) of 84-2-608 does establish a subjective test as to whether a nonconformity in merchandise substantially impairs its value to a particular buyer, whether or not the seller is aware of the buyer's particular circumstances. . . .

"It is likewise clear that in order to revoke acceptance pursuant to this subjective test, it is necessary for a buyer to establish by evidence that his particular circumstances differ in some respect from those of the average buyer, or reasonable person, so as to demonstrate objectively why an alleged nonconformity or defect substantially impairs the product's value *to him*. Plaintiff has failed to sustain his burden of proving this in this case.

"84-2-608 also provides in Section (2) that the revocation must occur within a reasonable time after the buyer discovers or should have discovered the grounds for it, and before any substantial change in condition of the goods which is not caused by their own defects.

"A purchaser of a Winnebago motor home who drives the same for eighty-seven hundred miles over a period of approximately eleven months, and experiences several mechanical or service problems, which the dealer does correct or cause to be corrected pursuant to the warranty, may not, because he is disillusioned with his purchase, invoke the revocation of acceptance provided for in that Section, and recover back from the seller all amounts he has paid towards the purchase price upon his return of the vehicle, that he had used to that extent and for that period of time.

"The judgment should be entered for the Defendant upon the Plaintiff's petition . . ."

The plaintiff lists six separate points on appeal but in reality only raises two issues: (1) whether the evidence established nonconformity of the motor home sufficient to justify the buyer's action, and (2) whether the buyer's revocation of acceptance was timely.

The statute involved has not been previously before this court. It reads, in applicable part, as follows:

K. S. A. 84-2-608. "(1) The buyer may revoke his acceptance of a . . . commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

. . . . . . . . . . . . . . .

"(b) without discovery of such nonconformity if his acceptance was reasonably induced . . . by the difficulty of discovery before acceptance . . .

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

*Jorgensen v. Pressnall*, 274 Ore. 285, 545 P. 2d 1382 (1976) is an action by the purchaser of a mobile home against the seller to enforce revocation of acceptance, brought under ORS. 72.6080 which, like our K. S. A. 84-2-608, is a verbatim enactment of § 2-608 of the Uniform Commercial Code. Numerous defects in the home were claimed, and both the seller and the manufacturer attempted repairs but water leakage and other serious problems remained. The seller contended on appeal that the buyer did not prove facts sufficient to justify rescission, asserting *inter alia* that there was no evidence that the uncorrected defects were material. The Oregon Supreme Court said:

"Whether plaintiffs proved nonconformities sufficiently serious to justify revocation of acceptance is a two-step inquiry under the code. Since ORS 72.6080 (1) provides that the buyer may revoke acceptance of goods 'whose nonconformity substantially impairs its value *to him,*' the value of conforming goods *to the plaintiff* must first be determined. This is a subjective question in the sense that it calls for a consideration of the needs and circumstances of the plaintiff who seeks to revoke; not the needs and circumstances of an average buyer. The second inquiry is whether the nonconformity in fact substantially impairs the value of the goods to the buyer, having in mind his particular needs. This is an objective question in the sense that it calls for evidence of something more than plaintiff's assertion that the nonconformity impaired the value to him; it requires evidence from which it can be inferred that plaintiff's needs were not met because of the nonconformity. In short, the nonconformity must *substantially* impair the value of the goods to the plaintiff buyer. The existence of substantial impairment depends upon the facts and circumstances in each case." (Footnotes omitted.) (545 P. 2d at 1384-1385.)

We agree. Nonconformity, the needs and circumstances of a purchaser, and impairment of value to a purchaser, are all questions of fact to be established by the evidence.

Plaintiff claims that the court disregarded the only evidence on the issue of whether the nonconformity of the vehicle substantially

impaired its value to him. While the plaintiff testified that the vehicle was in the shop for repairs two weeks out of each month and this substantially impaired its value to him, the court was entitled to review all of the evidence. As we noted above, plaintiff submitted an itemized statement to support his claim, and in that statement he listed the length of time it took for each repair. Taken at face value, the itemized statement shows that repairs required about 19 weeks, or 38% of the time the plaintiff owned the vehicle. Examined carefully, the statement and the evidence indicate that during much of that time the vehicle was serviceable and was in fact in use.

Plaintiff claims that the court erred in finding that the defendant made all of the repairs requested, and that plaintiff had no mechanical difficulties after the middle of September. Again, plaintiff's evidence was that a large number of repairs, many minor and some more serious, were satisfactorily remedied by the defendant. Both parties agree that an oil seal on a rear wheel was leaking at the time the vehicle was returned to the seller, but there is no evidence that the defendant was given an opportunity to replace the seal or refused to do so. Plaintiff also complains that there were other mechanical defects with the vehicle at the time it was returned (example: the front door latch needed tightening), but there is no evidence that these minor adjustments were requested or that the defendant failed or refused to take care of them.

The statute provides for revocation of acceptance only where the nonconformity of a unit *substantially* impairs its value. We have examined carefully all the cases cited by the plaintiff in his brief. Whether premised upon breach of warranty, rescission, or revocation of acceptance under the UCC, there is a common thread running through each of these cases which is entirely absent here: the seller in each case failed to remedy major defects in the vehicle. In none of the cases were repairs satisfactorily made.

Typical of these cases is *General Motors Corporation v. Earnest,* 279 Ala. 299, 184 So. 2d 811 (1966). The automobile vibrated badly, the motor knocked, the engine block was cracked, and there were various other defects. Although the car was returned some flfteen times to the dealer, satisfactory repairs were never made, and the car was in the same defective condition when the purchaser returned it as when he bought it. In *Tiger Motor Company v. McMurtry,* 284 Ala. 283, 224 So. 2d 638 (1969), the purchaser was in almost constant touch with the seller concerning the condition

of the vehicle. The car used oil in such excessive quantities that the purchaser was forced to buy it by the case. Oil was blown out from under a gasket. The condition was never repaired satisfactorily. We have found many similar cases; but we have found no case in which a purchaser has successfully revoked acceptance *after the seller satisfactorily repaired the vehicle.*

What constitutes substantial impairment of value to a purchaser is a factual determination to be made by the trier of fact. *Schumaker v. Ivers,* _____ S. D. _____, 238 N. W. 2d 284, 18 UCC Rep. Serv. 923 (1976). There, in an action for revocation of acceptance of an electric organ which malfunctioned and was never adequately repaired, the court said:

". . . Although there were conflicts in the testimony concerning the exact nature of the defects in the organ, it was for the trial court to weigh this testimony and determine whether the defects were of such magnitude as to warrant plaintiffs in revoking their acceptance of the organ." (238 N. W. 2d at 288.)

There was no evidence here before the trial court that repairs were inadequate or unsatisfactory. None of the defects discovered earlier remained when the acceptance was revoked. The vehicle was in immaculate condition and for all practical purposes the only repair needed was quite minor. There was no evidence that the plaintiff missed business trips with his band or would do so in the future because of lingering defects which the seller was unwilling or unable to repair.

There was substantial, competent evidence to support the findings of the trial court. Such findings are conclusive on appeal. *Kaw Valley State Bank & Trust Co. v. Riddle,* 219 Kan. 550, 549 P. 2d 927.

We conclude that the nonconformity of the vehicle at the time of surrender did not substantially impair its value to the purchaser and did not justify his action in attempting to revoke his acceptance, and that the district court did not err in its findings and conclusions. Having so ruled, we need not reach the second point raised, *i. e.,* whether the revocation was timely.

The judgment of the trial court is affirmed.