281 N.W.2d 756 (1979)
204 Neb. 209
COUNTRYSIDE MOBILE HOMES OF LINCOLN, INC., Appellant,
v.
Ruby E. SCHADE, Appellee.
No. 42191.
Supreme Court of Nebraska.
July 31, 1979.
*757 Sampson, Curry & Hummel, Central City, for appellant.
O. Wm. VonSeggern, of Cunningham, Blackburn, VonSeggern, Livingston & Francis, Grand Island, for appellee.
Heard before KRIVOSHA, C. J., McCOWN, and WHITE, JJ., and RONIN and HAMILTON, District Judges.
HAMILTON, District Judge.
This is an action tried to the court without a jury. Countryside Mobile Homes of Lincoln, Inc., appellant, filed an action in replevin against Ruby Schade, appellee, for the return of a 1977 Liberty mobile home purchased by appellee under an installment sales contract. The appellee filed an answer and cross-petition alleging she had rescinded the original contract and was entitled to the return of her downpayment. The appellant answered and amended its petition to ask for a deficiency judgment, the mobile home having been sold after appellant regained possession of it at the preliminary hearing in replevin.
The issue tried to the court was whether appellee could rescind the contract and, if so, whether such a recission took place.
The trial court found generally for Ruby Schade in that after accepting physical possession of the mobile home she discovered defects in it and appellant did not remedy the defects within a reasonable time. She was awarded a judgment in the amount of her downpayment.
On July 8, 1977, at Lincoln, Nebraska, the appellee purchased the mobile home for the sum of $14,364.76, with a downpayment of $5,599.76. This left a balance of $8,765 to be financed under the installment sales contract.
The mobile home was transported on July 11, 1977, to a trailer court in the Grand Island area and placed on a lot selected by appellee. The lot was muddy because of recent rain at the time the appellant's employees installed the trailer. A neighbor, Judy Small, testified that she observed the installation and the trailer became stuck about 3 feet from where it was to be placed. She stated: "[T]hey kept bringing it forward and rocking it really hard, you know, so it really shook it, and this went on for about a couple of hours."
Testimony of Michael Small, Judy's husband, indicated he was asleep when the men arrived but the noise from the installation caused him to awaken. He observed the employees hook a tractor with a chain to the trailer and attempt to pull the trailer, but the tractor became buried to its axles. At this point, they turned the tractor around, lifted the trailer with the tractor bucket, and blocked the trailer where it was sitting.
The appellant's employee, Gary Lange, acknowledged that when he installed the trailer it became stuck about 4 feet from the intended position and that it was necessary to rock the trailer, but denied the trailer was rocked excessively or that they used a tractor during the installation process. After attempting to rock the trailer free from the mud, he just installed the trailer 4 feet short of the intended position.
*758 Ruby Schade testified that she moved into the trailer a few days after its installation, immediately noticed defects, and stopped unpacking. She noticed that panels were buckled, wind came through doors and windows, doors were jammed and one door could not be locked, windows would not open, and bath water from the tub ran onto the floor. She further testified that when it rained, water came in the trailer and would run out from underneath the stove.
Appellee was unable to fix an exact date but indicated she complained to appellant about the defects within the first or second week of her possession. She was promised repairs but the man never showed up. She then notified appellant that there was so much wrong they ought to bring up a new trailer. Subsequently, repairmen did arrive on August 22, 1977, and appellee refused to allow any work to be done.
The appellant's salesman testified that he visited the mobile home the latter part of July and compiled a list of items to be repaired. This list was even more extensive than that testified to by the appellee. The witness said that the defect list was unusually long for a mobile home setup, but all of the items were repairable.
The appellant's assignments of error as summarized are: (1) The decision of the court is contrary to the evidence and the law; (2) the court erred in sustaining appellee's objection to cross-examination regarding an agreement of November 30, 1977; and (3) the court erred in sustaining appellee's objection to testimony relating to statements made by appellee's attorney.
The assignments of error will be discussed in reverse order. During direct examination of appellant's general manager, Wayne Matthes, the witness attempted to testify concerning statements made by appellee's counsel during a telephone conversation. Objection to this evidence was sustained by the trial court, and appellant made no offer of proof. The assignment of error is not argued nor discussed in appellant's brief. Errors assigned but not discussed will generally not be considered by this court on appeal. Rule 8 a 2 (3), Revised Rules of the Supreme Court, 1977; Cofer v. Perkins, 199 Neb. 327, 258 N.W.2d 807. In addition, error cannot be predicated upon a ruling which excludes evidence where the substance of the evidence was neither made known to the judge by an offer of proof nor was apparent from the context within which questions were asked. § 27-103(1)(b), R.R.S.1943.
During the course of cross-examination of Ruby Schade, the appellant questioned her concerning an alleged agreement entered into on November 30th between the witness and appellant's general manager. The discussion concerning the alleged agreement was had at the courthouse subsequent to the preliminary hearing in replevin. The record discloses the following: "Q. (By Mr. Curry) Do you recall a conversation between Mr. Matthes and yourself and myself in the courtroom? A. Outside of anything that the judge said, and I was sent out in the hallway, and I don't know what anybody said inside. Q. No, I mean after the hearing was over with, didn't we talk at lengthA. No. Q. About the problems with theA. I was sent out in the hall, and the rest of you stayed inside. I never got to hear anything. Your lawyer and you and the witnesses all stayed inside, and Mr. Kelly and me sat out in the hallway. Q. Isn'tA. I didn't hear nothing that was said. Q. Do you recall an agreement that you entered into whereby you were going to make some payments to your attorney and heA. There was no agreement, no. He told me that I would have to put up a bond."
The appellee objected to the above line of questioning on the basis of relevancy and the objection was sustained. The appellant's offer of proof indicated that if the line of questioning was allowed to proceed, the witness would testify such an agreement was entered into between the parties which would indicate there had been no rescission or no revocation of the installment sales contract.
It is impossible to determine the relevancy of the alleged agreement without the offer of proof showing its relevancy, and, in *759 the absence of such a showing, no error can be predicated upon the rejection of evidence. Blondel v. Bolander, 80 Neb. 531, 114 N.W. 574.
It would further be difficult to say that any rejection of evidence concerning an alleged agreement was prejudicial where the witness has already denied the existence of a conversation or an agreement.
The last assignment of error, that the findings of the court are contrary to the facts and the law, requires a discussion of the facts as applied to the law controlling the issues raised.
Section 2-608, U.C.C., provides, in part, "(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or * * * (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it * * *."
The testimony of the appellee indicates that immediately upon moving into the mobile home, appellee noticed some defects sufficient in magnitude to cause her to stop unpacking. She further testified that other defects were undiscoverable until it rained and leaks developed. Appellee notified appellant within the first or second week of the defects and was told that repairmen would fix the defects, but they did not show up as promised. Sometime around the middle of August, appellee notified appellant that she wanted a new unit.
Appellee's evidence by Dave Ragland, a mobile home repairman, was to the effect that there were numerous things which had to be repaired and that the time element and cost of repair would make them beyond trying to repair.
Appellant's evidence for the most part supported the appellee's evidence with regard to the defects, but appellant asserts that all defects were repairable.
The appellant's general manager testified that repeated telephone calls from appellee indicated she was extremely upset with the house, and he had made arrangements to have persons go out and reassure her that whatever was wrong with the house could be and would be repaired. This was done on the 16th of August and arrangements were made to send a serviceman to the mobile home on the 22nd of August. The general manager and his employee, Galen Staley, testified that the defects were normal items found in a mobile home after pulling a trailer the distance involved.
Appellant's evidence further showed that after regaining possession of the mobile home it was sold at public auction for the sum of $7,000.
In a trial to the court, the findings and judgment of the trial court on the facts have the same force as a jury verdict and will not be set aside if there is sufficient competent evidence to support it. Burhoop v. Pegram, 194 Neb. 606, 234 N.W.2d 828.
There is sufficient evidence in the record to support the finding of the trial court that after acceptance the appellee found defects that substantially impaired the value of the mobile home. Although neither conclusive nor the only evidence supporting diminution of value is the fact that the mobile home at public sale on January 16th brought $7,000. This was less than one-half its value when sold to the appellee.
There is sufficient evidence in the record that the appellee reasonably assumed the defects or the nonconformity of the mobile home would be cured and, upon not being seasonably cured, revoked her acceptance of the mobile home and demanded replacement.
Appellee was promised repairs and she testified that appointments were made for repairmen to arrive and start work, but they never arrived. Appellant claimed that repairmen were delayed because of an automobile accident and unavailability of parts, even though the factory was located in Kansas. In any event, the trial court, sitting *760 without a jury, chose to believe from the evidence that the delay was unreasonable under all of the circumstances.
Appellant asserts that since the appellee remained and lived in the mobile home until possession was obtained under the replevin action she exercised ownership of the unit and waived her right to revoke. This position overlooks the duty placed upon the buyer by section 2-608(3), U.C.C., which states: "A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." Section 2-602, U.C.C., provides for the manner and effect of rejection and subsection (2)(b) states: "[I]f the buyer has before rejection taken physical possession of goods * * * [buyer] is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; * * * ." It was the duty of the appellee to hold the goods for a reasonable length of time for the appellant to remove the same.
The appellant asserts that an agreement was entered into on November 30th following the replevin hearing wherein the appellee agreed to make payments to her attorney to be held until appellant could repair the mobile home. This was testified to by appellant's general manager. It is appellant's position that this agreement is inconsistent with a theory of revocation of the contract and inconsistent with the findings of the trial court.
The appellee denied there was any such agreement entered into between the parties. It is true, had such an agreement been entered into, the effect of that agreement could have favorable results for the appellant, but this result need not be decided since the appellant cannot be heard to complain where on conflicting evidence the trial court, sitting without a jury, chose to believe to the contrary on appellant's theory.
The evidence supports the findings and judgment of the trial court and they are affirmed.
AFFIRMED.