W. M. ERLING and Leanor M. Erling,
Plaintiffs and Appellees,

v.

HOMERA, INC., Defendant
and Appellant,

and

Jerry Carlson, dba J & J Trailer
Sales, Defendant.

Civ. No. 9777.

Supreme Court of North Dakota.

Oct. 27, 1980.

Gilje, Greenwood & Dalsted, Jamestown, for plaintiffs and appellees; argued by Charles J. Gilje, Jamestown.

Sproul, Lenaburg, Fitzner & Walker, Valley City, for defendant and appellant; argued by David E. Walker, Valley City.

Georgia M. Pope, Pope & Stites, Jamestown, for defendant; no appearance.

ERICKSTAD, Chief Justice.

Defendant, Homera, Inc., appeals from a judgment which allowed the plaintiffs, Mr. and Mrs. William Erling, to revoke their acceptance of a mobile home and required Homera and the co-defendant, Jerry Carlson, to return the plaintiffs' purchase price. The case was tried to the court without a jury. The judgment allowing revocation is affirmed, but the determination of set off is remanded with directions.

In August of 1976, the Erlings purchased a mobile home from Jerry Carlson, who was doing business as J & J Trailer Sales in Jamestown, North Dakota. The home had been manufactured by Homera, a Minnesota corporation. The purchase price was $13,936. That fall, the Erlings noticed what they believed to be leakage along the inside of the mobile home. They notified Carlson. Moisture was noticed again in March of 1977. In addition, the Erlings noticed that the siding was warping and that the windows collected water when it rained, which then ran into the interior of the trailer. In response to the window complaint, Homera flew an employee into Jamestown, where the trailer was located, to examine the problem, but no repair was attempted. Erling then made the repairs to the windows himself and Homera reimbursed him for his time and for the materials. In response to the moisture problem, Carlson cool-sealed the roof twice in the spring of 1977. In addition, Mr. Erling also cool-sealed the roof.

Moisture was again noticed in the fall of 1977, which at various times required that pots and pans be placed to catch the drip-

ping water. In December of 1977, the moisture was finally diagnosed as being condensation which was forming on the inside of the roof which would alternately freeze and melt with the varying temperatures of the spring and fall. At the request of Homera, a humidity gauge was placed in the home over the winter of 1977–78. This revealed no excessively high humidity in the home. The problem was believed to be due to inadequate air space above the insulation. In an attempt to correct this problem, a wind–powered ventilator was installed at Homera's expense in February of 1978, but this still did not solve the moisture problem.

The problem with the siding was referred by Homera to Masonite Corporation, the manufacturer of the siding. Masonite agreed to replace several panels of the warped siding if the moisture problem was corrected. The moisture problem persisted, even after installation of the wind–powered ventilator. The Erlings gave notice of revocation in April of 1978. In their notice of revocation, the Erlings offered the return of the mobile home upon receiving shipping instructions. They also demanded their entire purchase price plus interest at six percent. Suit was filed in June of 1978. The Erlings refused further attempts at repair by Homera. A court trial was held November 7, 1979, to determine the issue of revocation of acceptance. After trial, the court allowed the revocation of acceptance and ordered the return of the Erlings' purchase price of $13,936 without interest. It was apparently thought that the value of the use of the home and interest on the purchase price would offset each other.

Homera appeals on four grounds:

1. The finding that the appellees' mobile home was defectively designed is not supported by the evidence.
2. The condition of the appellees' mobile home did not substantially impair its value.
3. The district judge should have set off the fair and reasonable value of the appellees' use from the judgment awarding return of the purchase price.
4. The plaintiffs waived the right to rescind the contract by continuing to make full use of the mobile home.

Section 41–02–71 of the North Dakota Century Code provides for revocation of acceptance.[1] The relevant part of this section requires a non–conformity which substantially impairs the value to the buyer. Homera's first contention is that the finding that the mobile home was defective or non–conforming is not supported by the evidence.

## I. NON–CONFORMITY OF TRAILER

■ The Erlings purchased the mobile home for the purpose of using it as their residence. The evidence revealed that there was a condensation problem with the mobile home. Homera argues that it has complied with the government regulations concerning construction and design and, therefore, it was "inappropriate and unjustified" to determine that the home was defective or non–conforming. Simply meeting minimum standards, however, is not determinative of the issue. *Kirton v. Williams Elec. Co–op., Inc.*, 265 N.W.2d 702 (N.D.1978). In *Kirton*, we reversed entry of a summary judgment stating:

1. "41–02–71. (2–608) *Revocation of acceptance in whole or in part.*–1. The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it
   a. on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
   b. without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"2. Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"3. A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." § 41–02–71, N.D.C.C.

"It cannot be said that reasonable men could not differ on the inferences that could be drawn from the undisputed facts in this case. For example, it has not been disputed that the power line in question was in compliance with the provisions of the National Electrical Safety Code. The provisions in the National Electrical Safety Code only give the minimum allowable standards, however, and compliance with those provisions is considered only evidence tending to show due care and thus compliance is not determinative of the question of negligence." 265 N.W.2d at 707.

In *Kirton*, we were discussing negligence, but it is applicable to the present case to show that standards are only minimums, and compliance does not prove whether or not such actions are negligent or that products are conforming. This determination is left to the trier of fact. Compliance with standards may be used as evidence to show that a product is not defectively designed, but such evidence does not conclusively resolve the issue.

■ Homera also asserts that the court should not invade the province of an administrative agency. In this case, however, no administrative agency has made any determination of the facts. The determination whether or not the trailer was defective and therefore non–conforming was for the trier of fact. The court, as trier of fact, determined that the trailer did not conform to the contract. § 41–02–06, N.D.C.C. Under the Uniform Commercial Code there are implied warranties. § 41–02–31, N.D.C.C. (U.C.C. § 2–314). One of these implied warranties is that the goods are fit for the ordinary purposes for which such goods are used. § 41–02–31(2)(c), N.D.C.C. It is for the trier of fact to determine whether or not the mobile home conformed to the contract including the implied warranties.

■ The trial court's findings of fact may be set aside only when they are determined to be clearly erroneous. Rule 52(a), N.D.R.Civ.P.

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948)." *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973).

Simple compliance with standards does not prove that a product is conforming. This would be especially true here where the standards did not specifically cover the apparent source of the problem, namely, inadequate air space between the insulation and the roof. The trial court based its findings upon evidence that the condensation was due to inadequate ventilation. Under the circumstances of this case, we do not find that the trial court's determination that the mobile home was defective and hence non–conforming is clearly erroneous.

## II. SUBSTANTIALLY IMPAIRED VALUE TO THE BUYER

■ Homera's second contention is that the condition did not substantially impair the mobile home's value. Section 41–02–71, N.D.C.C., provides that the buyer may revoke when the product's non–conformity "substantially impairs its value to him." This is a factual determination to be made by the trier of fact. *Schumaker v. Ivers*, 90 S.D. 75, 238 N.W.2d 284, 287 (1976).

Homera argues that the determination of substantial impairment is a legal conclusion. It relies on *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn.1977). Minnesota appears to be among a minority of jurisdictions which deem substantial impairment to be a conclusion of law. We believe that the better view is that substantial impairment is a question of fact for the trier of fact. *Graulich Caterer, Inc. v. Hans Holterbosch, Inc.*, 101 N.J.Super. 61, 243 A.2d 253, 262 (1968) (what amounts to substantial impairment presents a question of fact); *McGilbray v. Scholfield Winnebago, Inc.*, 221 Kan. 605, 561 P.2d 832, 837 (1977) (substantial impairment is a factual determination to be made by the trier of fact); *Dehahn v. Innes*, 356 A.2d 711, 720 (Me.1976) (substantial impairment is a question of

fact); *Countryside Mobile Homes, Etc. v. Schade,* 204 Neb. 209, 281 N.W.2d 756 (1979); *Murray v. Holiday Rambler, Inc.,* 83 Wis.2d 406, 265 N.W.2d 513, 521 (1978); *Schumaker v. Ivers, supra,* 238 N.W.2d at 287.

■ In this case, the Erlings purchased their trailer home as their sole residence. The record shows that the defects in the home were not discoverable prior to their acceptance of the home. These defects were not cured by the seller. Mr. Erling had to repair the windows himself. He was reimbursed, however, for his labor and materials. The siding panels became so warped that Masonite Corporation agreed to replace at least three of the panels if the moisture problem was remedied. After one and one–half years of complaints and attempts to correct the problem, there was still condensation which, on occasions in the spring and fall, required placing pots and pans to catch dripping water. Considering this was a new mobile home, this must have been very aggravating. Under these circumstances, we cannot say that the trial court's determination that the value of the mobile home to the Erlings was substantially impaired was a clearly erroneous finding.

■ Homera also contends that it should have been allowed to make further efforts to repair the defect. After notice of revocation was given to Homera and Carlson, the Erlings refused to permit further efforts to correct the problem. Specifically, they refused the installation of an electrically–powered ventilator. Homera admitted that it could not guarantee that the ventilator would solve the moisture problem. The offer to install the electrically-powered ventilator came after one and one–half years of dissatisfaction on the part of the Erlings, after only minimal attempts on behalf of Homera and others to remedy the problem, and not until after notice of revocation.

■ A seller does not have an unlimited amount of time to cure the defects. *Jorgensen v. Pressnall,* 274 Or. 285, 545 P.2d 1382, 1385 (1976). Therefore, the refusal by the Erlings to allow any further attempts at repair after their revocation was not improper.

### III. WAIVER OF RIGHT TO REVOKE

■ Homera also alleges that the Erlings waived their right to revoke their acceptance by continuing to make full use of the mobile home. The Erlings use of the home prior to the notice of revocation was proper. § 41–02–71(1), N.D.C.C. Their acceptance was without notice of the defects in the trailer because such defects were not easily discoverable. § 41–02–71(1)(b), N.D.C.C. The Erlings continuing use prior to the revocation was in reliance on the seller's assurances that the defects would be corrected. *Id.*

After notice of revocation, the Erlings continued to use the mobile home as their residence. Subsection 3 of Section 41–02–71, N.D.C.C. provides:

"3. A buyer who so revokes has the same rights *and duties* with regard to the goods involved as if he had rejected them." [Emphasis added.] § 41–02–71(3), N.D.C.C.

Section 41–02–65, N.D.C.C., sets out the requirements of a rightful rejection:

"2. Subject to the provisions of the two following sections on rejected goods (sections 41–02–66 and 41–02–67),

a. after rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; ..." § 41–02–65(2)(a), N.D.C.C.

Section 41–02–67, N.D.C.C.,[2] provides that "if the seller gives no instructions within a reasonable time after notification

---

**2.** "41–02–67. (2–604) *Buyer's options as to salvage of rightfully rejected goods.*–Subject to the provisions of the immediately preceding section on perishables if the seller gives no instructions within a reasonable time after notification of rejection the buyer may store the rejected goods for the seller's account or reship them to him or resell them for the seller's account with reimbursement as provided in the preceding section. Such action is not acceptance or conversion." § 41–02–67, N.D.C.C.

of rejection [revocation], the buyer may store the rejected goods for the seller's account."

In this case, neither Homera nor Carlson gave the Erlings instructions concerning retaking of the home after receiving notice of revocation. Therefore, the Erlings were entitled to retain possession of the home. § 41–02–67, N.D.C.C.

■ In addition, Section 41–02–90, N.D.C.C., gives the buyers a security interest in goods upon a justifiable revocation of acceptance of such goods. Living in the trailer home was the Erlings' most reasonable method of protecting their security interest in the home. *Jorgensen v. Pressnall, supra,* 545 P.2d at 1386.

In this case, Carlson testified that the home was in very good condition and was maintained in as good a condition as could be expected during the Erlings' continued possession. Under the circumstances, the continued possession of the mobile home by the Erlings was not wrongful.

### IV. SET OFF FOR REASONABLE VALUE OF USE

■ Homera's final assertion is that the trial court should have allowed a set off against the judgment for a refund of the purchase price for the reasonable value of the Erlings' use of the mobile home. As we have earlier commented, the trial court apparently thought the value of the use of the premises and the value of the interest were equal, but no evidence was received upon which such a finding could be based.

Though the value of the home to the Erlings was substantially impaired, they have lived in it since it was purchased. The home has an ascertainable use value which should be determined and set off against the Erlings' purchase price. *Pedrini v. Mid–City Trailer Depot, Inc.,* 1 Wash.App. 56, 459 P.2d 76, 79 (1969).

Section 41–01–03, N.D.C.C.,[3] provides that other principles of law and equity are applicable unless specifically displaced by provisions of the Uniform Commercial Code sections of the North Dakota Century Code. The official Code comments to Section 2–608, U.C.C., which is verbatim Section 41–02–71, N.D.C.C., indicate that the drafters intended to allow a buyer to both revoke acceptance and recover damages for breach.[4] Section 41–02–71 does not use the term rescission; rather, it uses revocation of acceptance to prevent confusion. *See* footnote 4, *supra.* Therefore, the sections of the North Dakota Century Code relating to rescission are applicable except where the Code specifically provides otherwise. Two sections on rescission are applicable. They are Sections 9–09–04(2), and 32–04–23, N.D.C.C., which provide:

"9–09–04. *Rules governing rescission.* –Rescission, when not effected by consent or pursuant to sections 9–08–08 and 9–08–09, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

\* \* \* \* \* \*

2. He must restore to the other party everything of value which he has received from him under the contract or

---

3. "41–01–03. (1–103) *Supplementary general principles of law applicable.*–Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." § 41–01–03, N.D.C.C.

4. "1. Although the prior basic policy is continued, the buyer is no longer required to elect between revocation of acceptance and recovery of damages for breach. Both are now available

to him. The non–alternative character of the two remedies is stressed by the terms used in the present section. The section no longer speaks of 'rescission,' a term capable of ambiguous application either to transfer of title to the goods or to the contract of sale and susceptible also of confusion with cancellation for cause of an executed or executory portion of the contract. The remedy under this section is instead referred to simply as 'revocation of acceptance' of goods tendered under a contract for sale and involves no suggestion of 'election' of any sort." U.C.C. § 2–608:1(1).

must offer to restore the same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so."

"32–04–23. *Compensation may be required.*–On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require."

As there was no evidence supporting the trial judge's award of set off of interest on the purchase price against the value of the use of the home, we remand for determination of the reasonable value of use of the home from the time of purchase to date of hearing on remand. The value of this use less interest at the rate of six percent per annum on the purchase price to the date of hearing on remand should be set off against the purchase price. The Erlings asked for interest at the rate of six percent per annum in their notice of rescission (revocation of acceptance) and this is consistent with Section 47–14–05, N.D.C.C.

The judgment of revocation is affirmed, but the case is remanded for the taking of additional testimony and for amendment of judgment consistent with this opinion.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.