2002 SD 158

**Manuel D. RAMOS, Plaintiff and Appellant,**

v.

**FORD MOTOR COMPANY, a corporation, and Tyndall Ford Mercury, Inc., a corporation, Defendants and Appellees.**

**No. 22332.**

Supreme Court of South Dakota.

Considered on Briefs on Nov. 18, 2002.

Decided Dec. 18, 2002.

**448**

William A. Moore, Scotland, South Dakota, Attorney for plaintiff and appellant.

Thomas E. Alberts, Avon, South Dakota, Attorney for defendants and appellees.

GILBERTSON, Chief Justice.

[¶ 1.] Dr. Manuel Ramos (Ramos) experienced several problems with a new Ford pickup that he purchased from Tyndall Ford. He brought suit against Ford Motor Company (Ford) and Tyndall Ford, seeking damages and revocation of the sales agreement pursuant to SDCL 57A–2–608. After a bench trial on the merits, the trial court entered judgment in favor of the defendants. Ramos appeals and we affirm.

## FACTS AND PROCEDURE

[¶ 2.] Ramos is a medical doctor and surgeon who lives in Scotland, South Dakota. In 1999, Ramos purchased a new 1999 Ford pickup from Tyndall Ford. When he bought this vehicle, he received a bumper to bumper 36–month/36,000 mile warranty. The total purchase price of the pickup was $30,741.52 plus $357.33 in licensing and fees.

[¶ 3.] After taking possession of the pickup on January 28, 1999, Ramos immediately noticed an unusual jerking while slowing down to make a turn. Ramos called Joe Plihal (Plihal), the president of Tyndall Ford and informed him of the problem he was experiencing. Plihal drove Ramos' pickup and told Ramos not to worry because there was nothing wrong with the pickup. Ramos did not complain of the jerk again.

[¶ 4.] In October 1999, Ramos experienced a leak in the oil hose of the pickup. Tyndall Ford told Ramos it was caused by a manufacturer's defect and repaired the oil hose pursuant to the warranty. Two months later, Ramos again experienced problems with his pickup. The pickup would not travel in reverse without several minutes of shifting back and forth. The pickup was returned to Tyndall Ford where it was serviced for approximately eight to ten days. Tyndall Ford found another manufacturer's defect, a cracked transmission case, and informed Ramos this defect had been repaired pursuant to the warranty.

[¶ 5.] However, Ramos claims that he continued having problems getting his pickup into reverse. The pickup hesitated for at least a second before moving in reverse. Although Plihal offered to find the problem and correct it, Ramos stated that he "didn't want the truck worked on anymore." Furthermore, Ramos informed Plihal the pickup was a lemon and he no longer wanted to operate or own the vehicle. Ramos drove the pickup back to Tyndall Ford and left the key, thereby attempting to revoke acceptance because of

his "loss of confidence" in the vehicle. Ramos brought a cause of action against Ford and Tyndall Ford on September 1, 2000.

[¶ 6.] Before trial, in February of 2001, Ford employee Dana Voshell (Voshell) test-drove the pickup several times over a two-day period. In over thirty tests of the reverse gear, Voshell found that not once did he experience a delayed response or "hesitation" with the transmission as alleged by Ramos.

[¶ 7.] The trial court found that based on the evidence in the record, Ramos had failed to prove that he was entitled to revocation of the sales agreement and entered a judgment for defendants on February 4, 2002. Additionally, the trial court found that Ford and Tyndall Ford did not breach any express or implied warranties applicable to the vehicle. Ramos brings this appeal, seeking review of the following issue:

> Whether the trial court properly found that Ramos did not revoke his acceptance under SDCL 57A–2–608.

## STANDARD OF REVIEW

[¶ 8.] The standard of review for the circuit court's findings of fact is the clearly erroneous standard. *New Era Mining Co. v. Dakota Placers, Inc.*, 1999 SD 153, ¶ 7, 603 N.W.2d 202, 204 (citing *Rabenberg v. Rigney*, 1999 SD 71, ¶ 4, 597 N.W.2d 424, 425 (citing *In re Estate of O'Keefe*, 1998 SD 92, ¶ 7, 583 N.W.2d 138, 139)). "Clear error is shown only when, after a review of all the evidence, 'we are left with a definite and firm conviction that a mistake has been made.'" *Id.* "The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them." *Lewis v. Moorhead*, 522 N.W.2d 1, 3 (S.D.1994) (citing *Cuka v. Jamesville Hutterian Mut. Soc.*, 294 N.W.2d 419, 421

(S.D.1980)). Conclusions of law are reviewed under a de novo standard, giving no deference to the circuit court's conclusions of law. *Sherburn v. Patterson Farms, Inc.*, 1999 SD 47, ¶ 4, 593 N.W.2d 414, 416 (citing *City of Colton v. Schwebach*, 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771).

## ANALYSIS AND DECISION

[¶ 9.] **Whether the trial court properly found that Ramos did not revoke his acceptance under SDCL 57A–2–608.**

[¶ 10.] Ramos sought revocation of acceptance of the vehicle pursuant to SDCL 57A–2–608. This statute provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

[¶ 11.] Essentially, Ramos argues that the trial court erred in its interpretation of SDCL 57A–2–608. Ramos argues that although the trial court construed this statute as potentially authorizing a buyer to revoke if he loses confidence in the relia-

bility and integrity of a vehicle, the trial court improperly found that the vehicle must contain a defect at the time of the attempted revocation of acceptance. Furthermore, he argues that he was entitled to revoke his acceptance based on the implied warranty of merchantability as prescribed by SDCL 57A–2–314.

[¶ 12.] It is well-settled law that "[a]s conditions precedent to revocation of acceptance it must first be shown (1) that the goods are nonconforming and (2) that such nonconformity substantially impairs the value of the goods to the buyer." *Cundy v. Int'l Trencher Serv., Inc.*, 358 N.W.2d 233, 237 (S.D.1984) (finding that although machine had several mechanical defects, buyer of machine was not entitled to revoke acceptance, particularly where machine had been repaired and had since functioned properly). Furthermore, in *Schumaker v. Ivers*, we held that what constitutes substantial impairment is a factual determination to be made by the trier of fact. 90 S.D. 75, 81, 238 N.W.2d 284, 287 (1976) (additional citations omitted). A substantial impairment means more than a minor defect that is easily repairable. *Id.*

[¶ 13.] In the trial court's memorandum opinion, it stated that were the court to find that the vehicle contained a jerk or hesitation when Ramos gave up the vehicle, his alleged loss of confidence would be more likely to be reasonable. However, because the court did not find any defects at the time of the attempted revocation, it found that Ramos' loss of confidence was not reasonable.

[¶ 14.] We find that there was ample support in the record for the trial court to find that at the time of Ramos' attempted revocation, the vehicle was not substantially impaired. The trial court was able to observe all the witnesses' testimony and weigh all the evidence. *See Schumaker*,

90 S.D. at 82–83, 238 N.W.2d at 288. For example, at trial, Voshell testified that after test driving the vehicle multiple times and testing the reverse gear more than thirty times, he did not experience the "hesitation" complained of by Ramos. In addition, Plihal testified at trial that he test drove the vehicle and did not experience the "hesitation" problem either. Furthermore, Ramos did not present evidence to contradict this testimony and to show that a defect was present in the vehicle at the time he attempted to revoke his acceptance.

[¶ 15.] The trial court was also correct in rejecting Ramos' proposed conclusion of law that there was an implied warranty of merchantability in the vehicle. For support, Ramos points to SDCL 57A–2–314(3), which provides that "unless excluded or modified ... other implied warranties may arise from course of dealings or usage of trade." Ramos asserts that he had bought five other pickups from Tyndall Ford and thus, there arose an implied warranty that the 1999 pickup "would be at least as merchantable and perform at least as well as the other five pickups ..." However, SDCL 57A–1–205 defines course of dealing as "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Ramos did not present any evidence that Tyndall Ford's conduct created any sort of implied warranty. Therefore, his proposed conclusion of law was properly rejected.

[¶ 16.] Affirmed.

[¶ 17.] SABERS, KONENKAMP, and ZINTER, Justices, concur.

[¶ 18.] AMUNDSON, Retired Justice, concurs.

[¶ 19.]   MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.