## CIRCUIT COURT OF HENRICO COUNTY

FinanceAmerica

    v.

M. L. Barnaby, Jr., et al.

January 21, 1981

Case No. 79-L-33

By JUDGE E. BALLARD BAKER

FinanceAmerica seeks judgment against M. L. Barnaby, Jr. and Barbara A. Barnaby for $6,251.29, plus interest at 15.19% from December 21, 1978, and attorney fees. It alleges the Barnabys bought a Champion Motorhome on June 23, 1977, from McGeorge Camping Center, Inc. by a retail installment contract; that McGeorge assigned the contract to Finance America; that the Barnabys have defaulted on their payment obligation under the contract; and that on foreclosure sale there was a deficiency of $6,251.29.

The Barnabys have denied liability, and filed a counter-claim and a Third Party Motion for Judgment against McGeorge.

The Barnaby's claim involved, among other things, a question of warranties and the applicability of the Magnuson-Moss Act. After consideration of the latter aspect of the case, this Court concluded that a dealer-

supplier such as McGeorge, by passing on to the Barnabys the written warranty of Champion, the manufacturers, did not assume that warranty. (see Mr. Bischoff's letter of April 1, 1980, with particular reference to 16 C.F.R. 700.4).

The case came on for trial on October 29-30, 1980, without a jury. The issues involved the foreclosure procedure followed by FinanceAmerica and the contract and relationship between the Barnabys and McGeorge.

## THE FORECLOSURE SALE

Section 8.9-504 covers the rights of a secured party, such as FinanceAmerica, and sub-section (3) provides how disposition of the property may be made. Section 8.9-506 and 8.9-507 are also relevant.

FinanceAmerica filed Exhibits 1, 2, 3, 4, 5 and 6 in support of its sale. These Exhibits reveal a sale after newspaper advertisement of the highest of three bids, with a deficiency of $6,251.29 after all expenses and finance charge refund. The Motorhome brought $9,500.00, but the amount due on the installment contract was $15,602.91.

The statutes require a sale in a commercially reasonable manner and that the secured party proceed in good faith. The evidence supports a conclusion that FinanceAmerica has met the requirements.

The Retail Installment Contract, (Plt. Ex. 1), was assigned by McGeorge to FinanceAmerica by a non-recourse assignment and warranty. The warranty includes a statement that the contract ". . . contains the entire agreement between the Seller and Buyer and there is no . . . other concessions (sic) affecting said Retail Installment Contract; that the Seller will continue to service said goods in accordance with any contract made with the Buyer thereof."

The Contract, and the Retail Buyers Contract, (Barnaby Ex. A), provide that any holder is subject to

all claims and defenses the debtor could assert against the seller.

The Contract, and the contentions of the Barnabys, require consideration of whether the Barnabys have any claims or defenses against McGeorge.

## THE McGEORGE - BARNABY CONTRACT

In June 1977, the Barnabys approached McGeorge to buy a Champion Motorhome for pleasure and for use by Mr. Barnaby in his work which required him to be away from home frequently. He was told that McGeorge could service the vehicle, get any necessary parts and do the work required under the manufacturer's warranty. The Barnabys say McGeorge said any work done under a warranty could be completed in three days, or not over a week. McGeorge's salesman denied making any representation that parts could be obtained and the vehicle services in three days, but admits saying McGeorge had good service facilities and would do warranty work on all parts of the vehicle except the running gear.

By Retail Buyers Contract dated June 22, 1977, the Barnabys agreed to purchase this Champion Motorhome for $19,926.94. (Barnaby Ex. A). This contract includes a statement, signed by Mr. Barnaby, that he received a ". . . copy of the warranty before signing . . ." On the reverse side appears a disclaimer by the dealer of ". . . all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose." The contract provides that any warranties are those of the manufacturers only and not the dealer.

On June 23, 1977, the Barnabys signed the Retail Installment Contract which was later assigned to FinanceAmerica. (Plt. Ex. 1). Nothing in this document makes reference to any warranties.

In view of the conclusion that McGeorge does not assume the warranty of Champion by passing such war-

ranty on at the time of sale, the question arises whether McGeorge made any warranties of its own.

Virginia Code § 8.2-313 provides that:

Any affirmation of act or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

Sections 8.2-314 and 8.2-315 relate to the implied warranties of merchantability or fitness for a particular purpose.

Section 8.2-316 allows for the exclusion or modification of warranties.

McGeorge Ex. A was the various warranty documents given to the Barnabys by McGeorge at the time of sale. In addition to the Champion warranty there are eleven other separate warranties covering various parts of the Motorhome. The Champion warranty is limited to one year or 12,000 miles, and as expressed in the owners guide:

The warranty covers substantial defects in workmanship and materials including appliances, accessories, heating and air-conditioning equipment. Notice of any defect must be given to your dealer-seller for its inspection. The manufacturer or dealer-seller will provide repair or replacement of any such part upon its return to the dealer-seller.

Under this document, and the oral statements by McGeorge to the Barnabys it appears that McGeorge did promise the Barnabys that it would service the vehicle in accord with the Champion warranty. McGeorge's promise is, under these circumstances, a part of the basis of the bargain and an express oral warranty

by McGeorge under § 8.2-313, unless there is a valid disclaimer.

The Retail Buyers Contract (Barnaby Ex. A) ". . . EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED . . ." in that part of the contract immediately after the statement that any warranties applicable to a new vehicle are those of the manufacturer.

The words and conduct of McGeorge relating to service are relevant to the creation of an express warranty while the above quote tends to negate a warranty, thus bringing into play § 8.2-316(1) which says:

> Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed whenever reasonable as consistent with each other. . .

McGeorge's oral statements, plus its conduct in delivering to the Barnabys the Champion warranty with its reference to what the dealer-seller will do, can be reasonably construed as consistent with the disclaimer.

A reasonable construction is that McGeorge promises to service under the Champion warranty but does not itself make any warranty against defects in workmanship and materials. Those remain solely the warranties of Champion. McGeorge's undertaking is to provide service and repair or replace defective parts. McGeorge cannot reasonably be held to warrant that replacement parts themselves are not defective or that parts are readily available. The Barnabys knew that McGeorge was not the maker of the parts and had to rely on Champion or someone else for replacements.

(This undertaking of McGeorge is not a ". . . service contract . . ." under Magnuson-Moss as it is not a written agreement by McGeorge, nor does Barnaby Ex. B make it such).

Did McGeorge do what it had to do?

The Barnabys took possession in June 1977. On many occasions over the next twelve months the Motorhome was taken to McGeorge for servicing and new parts. McGeorge did what it could, though in many areas the result was not satisfactory to the Barnabys. Sometime in the last summer of 1978, the Barnabys returned the vehicle to McGeorge, leaving it on the lot. According to the Barnabys this was the culmination of many problems with the vehicle which had resulted in it being returned to McGeorge for servicing many times since June 1977. The problems related to the air conditioner and defroster, the hot water heater, the furnace, the refrigerator and other items. Prior to leaving the Motorhome the Barnabys had made considerable use of it, and the mileage was less than 50,000.

Evidence on the leaving of the vehicle with McGeorge is skimpy. A letter from counsel for the Barnabys to McGeorge dated June 23, 1978, and filed as Barnaby Ex. D reflects conversations between them at that time, and testimony of J. G. Holt, a former employee of McGeorge supports the contentions of Barnaby that McGeorge would order the necessary replacement parts on those things under warranty. Sometime later, Holt saw the vehicle on the McGeorge lot, but was not contacted when it was returned.

Tom Kaiser, service manager for McGeorge, checked out the vehicle and ordered some parts after Holt and Barnaby talked with him. Kaiser found no problem with the electrical system, and, except for a blower motor and some curtains which McGeorge ordered but did not receive before the vehicle was left on the lot, Holt is not aware of any major problems. He did say McGeorge had problems getting parts for the unit.

No list or copy was produced to evidence what was wrong or incomplete with the vehicle when Barnaby left it. The Barnabys say it was taken to McGeorge and left for McGeorge to get it right or keep it, and that there were several things wrong with the unit.

In my view, while McGeorge did represent that it would do service work under the Champion warranty the evidence supports the conclusion that it did do such work. Any lack of satisfaction to the Barnabys is the result of a delay by other persons in getting parts needed for McGeorge to do the work. This Court does not believe the Barnabys have proven any failure by McGeorge to do what it said it would do.

Barnaby has not satisfied the Court that McGeorge made any three day promise, but even if so this case is here because of the Barnabys' return of the Motorhome subsequent to the conversation between the parties reflected in the June 23, 1978, letter. (Barnaby Ex. D). There is no reference to time within which McGeorge would do what it undertook to do or within which the parts were to be available.

It must also be noted that the Motorhome, at the time of the June 23, 1978, letter, had more than 12,000 miles. The June letter reflects a willingness on the part of McGeorge to try and satisfy the Barnabys despite the mileage, but I do not believe that McGeorge took on any additional obligation by that letter.

In short, this Court is unable to find that the Barnabys have any claim or defense against McGeorge, or that McGeorge breached any warranty it made.

## REVOCATION OF ACCEPTANCE

Revocation of acceptance is an alternate remedy for a dissatisfied consumer under the UCC.

The Barnabys returned the Motorhome to McGeorge in September 1978 as noted, and the brief comments on the facts relating to the return are applicable here.

Section 8.2-608 allows a buyer to revoke acceptance of a unit ". . . whose nonconformity substantially impairs its value to him if he has accepted it (a) on the reasonable assumption that its nonconformity

would be cured and and it has not been seasonably cured . . ."

The Barnabys' position is that the Motorhome was nonconforming, that this substantially impaired its value to them, that they accepted it on the reasonable assumption that the nonconformity would be cured and that this was not seasonably cured.

The right of a buyer to revoke acceptance means the right to revoke goods accepted under a contract with the seller. 2 Anderson, Uniform Commercial Code, p. 241. McGeorge is the seller with whom the Barnabys contracted.

Holding as I do that McGeorge has not been proven to have failed to do anything it agreed to do under the contract, that McGeorge is not responsible for any failure of Champion to provide satisfactory parts, is there any basis for allowing revocation of acceptance?

Cases involving revocation of acceptance are numerous. Many can be found digested in Anderson, Uniform Commercial Code, Cumulative Supplement pp. 640-648; in the Cumulative Supplement found in 2 Anderson, Uniform Commercial Code, pp. 42-58; and in 3 Uniform Commercial Code, Case Digest, pp. 386-432.

It appears to this Court that the Barnabys have shown that the Motorhome was nonconforming for a substantial period of time, but that the Barnabys made considerable use of it during that time. At the time the Motorhome was returned, it appears that a blower motor and some curtains were not available, the C.B. radio was not in and the refrigerator worked off and on.

Under § 8.2-607(4) the burden is on the Barnabys to establish a breach. This requires proof that any nonconformity substantially impaired its value to them as the time of revocation where revocation is the remedy sought. 2 Anderson UCC, Supplement, pp. 49-50.

The lack of documentation as to what was nonconforming at the time of revocation raises concern as to whether there was any substantial impairment at the time of revocation. However, assuming that there was, there remains the problem of establishing that any nonconformity is the result of the failure of the seller, McGeorge, to do what it undertook to do. And as noted earlier, the evidence does not permit a finding of that.

What we have here is a Motorhome, used by the Barnabys for about fourteen months with extensive mileage, well over 12,000, returned numerous times for service, which service McGeorge provided as well as it could, and with any non-conformity resulting from something not the fault of McGeorge. Under these circumstances, there is no right to revoke acceptance and have the relief provided upon such revocation.

Stroh v. American Recreation, 530 P.2d 989, cited by the Barnabys, allowed recovery where there was a revocation some thirteen months after purchase, but the dealer was held to have breached its implied warranty of fitness for a particular purpose, and the warranty had not been effectively disclaimed. The mileage put on the mobile home is not stated in the opinion.

McGilbray v. Scholfield Winnebago, Inc., 561 P.2d 832, involved a vehicle driven some 8700 miles over an eleven month period. The Court held the buyer had failed to prove a right to revoke acceptance. The present case is more like McGilbray.

The Barnabys also contend that McGeorge's statements were misrepresentations which induced them to enter the contract, permitting them to rescind the contract regardless of the provisions of the UCC. Robberecht v. Maitland Bros., 220 Va. 109, supports this proposition. However, as I find no failure of McGeorge to do what it said it would do, I find no misrepresentation. I do not believe the Barnabys have proven any promise to get parts in three days, and I question any reliance upon such statement. It also

appears that the final return of the Motorhome was not the result of any failure to get parts in three days, that being no part of the June 1978 undertaking of McGeorge.

## CONCLUSION

FinanceAmerica is entitled to recover on the retail installment contract assigned to it, and the Barnabys cannot prevail on their defense or on their counter-claim.

The balance due after the sale on December 21, 1978, is $6,251.29. On this, FinanceAmerica is entitled to interest and reasonable attorney's fees.

The Motion for Judgment asks for interest at 15.19% which is the annual percentage rate in the Retail Installment Contract. Once there has been a foreclosure and a deficiency has been established is the creditor entitled to the interest rate set by the contract? Any comment on that can be submitted along with comment as to "reasonable attorney's fees".