## Stofman v. Keenan Motors, Inc.

*Charles W. Gross*, for plaintiffs.
*Reuben Singer*, for defendant.

LEVIN, J., June 12, 1973.—This is an action in assumpsit in which plaintiffs seek to recover the purchase price of an automobile bought from defendant car dealer due to the failure of the car to operate properly. Plaintiff-wife, the usual driver of the automobile, repeatedly complained of excessive vibrating and stalling in the new car, and when defendant failed to repair the defect to her satisfaction, she attempted to revoke her acceptance of the car and recover $2,000 paid in full on the sales contract.

The relevant facts in this case are as follows:

1. On March 9, 1972, plaintiffs purchased a late model 1971 two-door Austin Sedan from Keenan Motors. One thousand dollars was paid on the date of delivery; the remaining balance of $1,000 was paid through their finance bank on April 6, 1972.

2. On the following day, March 10th, the vehicle was returned to defendant for the adjustment of continual vibrating.

3. The vehicle was brought back to the shop on March 20th after plaintiff had encountered problems when the vehicle stalled in traffic. She was told on this occasion that the fuel pump would have to be replaced, and it is apparent from D-1 that some such replacement of parts was, in fact, made before the vehicle was returned to plaintiff 10 days later.

4. On approximately three other occasions between March 9th and April 15th plaintiff complained to defendant of similar vibrating and stalling problems, and minor adjustments were made at those times. On at least two of the occasions on which the car stalled, it was nearly hit by oncoming traffic which was forced to stop short in order to avoid the suddenly motionless Austin.

5. On April 16, 1972, plaintiff-husband was driving the automobile when it stalled in Berlin, N.J., and had to be towed to defendant's service department. Defendant paid the towing charge, again inspected the car and returned it, saying the vibration was normal for a front-wheel drive car such as the one plaintiffs had purchased.

6. On April 19, 1972, plaintiff-wife was told by defendant to bring the car in for inspection by a "factory representative."

7. On that date, Joseph Gallagher, a representative of the local Austin distributor, inspected the car in the morning and recommended that the fuel pump be replaced. Plaintiff-wife remained at the service department throughout the day, then left at 4 p.m., when a workman and the service representative indicated the repair work was not completed but would be finished shortly. The car was left with defendant and is still there.

8. The following day, plaintiffs' attorney wrote to defendant rejecting his clients' previous acceptance of the car.

9. Defendant states that the repair work performed on April 19th, cured the car's defects, and counterclaims for payment of storage charges since that date.

10. During the six weeks time that plaintiffs possessed the car, they drove it approximately 750 miles.

The facts present the complaint of an ever-increasing

number of consumers who purchase new automobiles but who are thereafter unable to get necessary and satisfactory adjustments made on their new cars. In many cases these highly mechanized machines with so many moving parts will require careful alterations before they will run as smoothly as they should. The question we must consider is just how long the buyer must wait and how many unfulfilled promises may be made before he is entitled to revoke his acceptance of an automobile and be returned the purchase price. Our sympathies lie with those who repeatedly return their cars for repairs or service, then get them back in almost the same condition as when the complaints were originally registered. Sympathies aside, the law, ever just, provides a remedy for the situation where such a purchaser seeks to revoke his acceptance after receipt of and payment for the goods purchased. The remedy of revocation of acceptance is prescribed by the Act of April 6, 1953, P.L. 3, sec. 2, 12A PS §2-711, re-enacted October 2, 1959, P.L. 1023, and is discussed in Casey v. Philadelphia Auto Sales Co., 428 Pa. 155 (1968), wherein plaintiffs were precluded from instituting a suit in equity for rescission of the sales contract where there was an adequate remedy at law, i.e., section 2-711. It is noteworthy that the court in Casey was willing to apply section 2-711 to the revocation of acceptance of a *used-car* of very questionable fabric. There can be no question that that rule is equally applicable to the situation here involving a brand new, allegedly sound vehicle. A merchant seller impliedly warrants to each and every buyer that the goods purchased are fit for the ordinary purposes for which such goods are used. Surely an automobile that is to be driven on public roads and highways cannot reasonably be classified as fit for ordinary purposes if it is so dangerous as to stall repeatedly, presenting a threat

to the safety of the driver, passengers and all those who use our highways. Even apart from the vibrations, which of themselves amount to only an annoying disturbance, the constant stalling constituted a condition sufficient to warrant the return of the automobile.

Defendant raises two contentions as proof that plaintiffs have not *justifiably* revoked their acceptance. First, defendant claims that the vibrations plus stalling were inherent and normal for a car of that type. We find no merit in this assertion. Plaintiff-wife and two other highly credible witnesses each testified to the abnormal problems of this particular car, and defendant, by the replacement of the fuel pump, implicitly conceded that major repairs were necessary and that the prior adjustments did not leave the car in sound operating condition.

Secondly, defendant contends that its willingness to repair the car free of charge rendered plaintiffs' return of the car unjustifiable and unnecessary. Admittedly, a merchant-seller must be given a reasonable opportunity to correct defects in a product, but we believe that defendant had more than ample opportunity to make these changes over the course of the six weeks during which plaintiff-wife brought the car in for service and specified the particular defects about which she was concerned.

There being no further question about the existence of the mechanical defects, we need only determine if plaintiffs followed the correct procedures in revoking their acceptance. Defendant suggests that by using the car for six weeks and permitting their finance bank to pay the balance of $1,000 on April 6th, plaintiffs waived their right to revoke their acceptance. Such a thesis ignores the clear language of the Act of April 6, 1953,

sec. 2, reenacted October 2, 1959, P.L. 1023, 12A PS §607(2), which states:

"Acceptance of goods by the buyer precludes rejection of the goods accepted if made with knowledge of a non-conformity cannot be revoked because of it *unless the acceptance was on the reasonable assumption that the non-conformity would be reasonably cured.*" (Italics supplied.)

The preceding quotation describes exactly the situation at bar. The statute also requires that where a tender has been accepted "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach": 12A PS §2-607(3)(a). Following defendant's repeated but unsuccessful attempts to cure the deficiency, plaintiff-wife told the service representative she didn't want the car any longer and, lest that be unclear, she had the attorney write defendant a letter the following day reiterating her decision to revoke acceptance.

Plaintiffs have persevered through a procession of aborted attempts to render their car safely operable, and they had done everything within their power to give defendant an opportunity to remedy the defects. The law recognizes their right to revoke acceptance of a vehicle which was sold and remained unrepaired in disregard of their rights, and to recover so much of the price as has been paid. Accordingly, we make the following

ORDER

And now, June 12, 1973, we find in favor of plaintiffs and against defendant in the amount of $2,000, with interest from April 20, 1972.