No. 53,460

Fred L. Newmaster, *Appellee,* v. Southeast Equipment, Inc., *Appellant.*

(646 P.2d 488)

Opinion filed June 11, 1982.

*Kurtis I. Loy,* of Loy & Loy, of Pittsburg, argued the cause and was on the brief for the appellant.

*David K. Markham,* of Parsons, argued the cause, and *John B. Markham,* also of Parsons, was with him on the brief for the appellee.

The opinion of the court was delivered by

Fromme, J.: This action was filed to obtain a revocation of acceptance under terms authorized by K.S.A. 84-2-608 and a judgment for the amount of the purchase price. The case was tried to the court, revocation of acceptance was decreed, and judgment in favor of the plaintiff and against the defendant was entered in the sum of $4,120.00 plus costs.

K.S.A. 84-2-608 reads:

"(1) The buyer may revoke his acceptance of a *lot or commercial unit* whose nonconformity substantially impairs its value to him if he has accepted it

"(*a*) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(*b*) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them." Emphasis supplied.

A "commercial unit" as used in the above statute is defined in K.S.A. 84-2-105(6) as follows:

" 'Commercial unit' means such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use. A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole."

Under the provisions of these statutes this court held in *McGilbray v. Scholfield Winnebago, Inc.,* 221 Kan. 605, Syl. ¶ 1, 561 P.2d 832 (1977):

"The purchaser of a motor vehicle who seeks to enforce a revocation of acceptance pursuant to K.S.A. 84-2-608 must establish (1) the nonconformity of the vehicle, (2) the needs and circumstances of the purchaser, and (3) that the nonconformity in fact substantially impairs the value of the vehicle to the purchaser."

Revocation of acceptance is a remedy which allows a buyer to get rid of defective goods by returning them to the seller. Revocation, however, occurs at a later stage of the sales contract: after acceptance. Also, while a buyer may nominally reject for any defect, he or she may revoke acceptance only when the nonconformity is substantial. Rasor, Kansas Law of Sales § 10-3 (1981).

Under the terms of section 84-2-608 at paragraph (1), revocation of acceptance is possible only when the nonconformity substantially impairs the value of the machine to the buyer.

Under paragraph (2) of 84-2-608 notification of revocation of acceptance must be accomplished within a reasonable time after discovery of the grounds for such revocation, and the buyer may not revoke his acceptance if the machine has materially de-

teriorated while in the hands of the buyer except when deterioration has occurred by reason of defects inherent in the machine. See the official UCC Comment following the statute, paragraphs 4 and 6.

Under the provisions of this section the buyer must also have accepted the goods under circumstances which bring him within either paragraph (1) (*a*), reasonable assumption of cure, or paragraph (1) (*b*), difficulty of discovery.

In other words the purchaser of a machine who seeks revocation of acceptance pursuant to K.S.A. 84-2-608 must establish (1) the nonconformity of the machine to the needs and circumstances of the purchaser when purchase was made, (2) that such nonconformity in fact substantially impaired the value of the machine to the purchaser, and (3) that the purchaser accepted the machine under circumstances which bring him within either paragraph (1) (*a*), reasonable assumption of cure, or paragraph (1) (*b*), difficulty of discovery.

The trial court heard the evidence in this case and made complete findings of fact from which the following facts were gleaned:

The plaintiff, Fred L. Newmaster, now 79 years of age, did on or about April 28, 1978, purchase a John Deere Powr-Till Seeder from the defendant, Southeast Equipment Company, Inc., for the sum of $4,000.00 plus sales tax of $120.00. Such a tiller is designed to break the soil with spiked wheels and drop the seed into the soil in one operation. This was what Mr. Newmaster perceived as the machine's desirable quality since it eliminated passing over the field with a disc to break the soil and then passing over it again with a conventional seed drill, saving topsoil and fuel. Mr. Newmaster intended to use the machine to sow sudan grass seed.

Mr. Newmaster dealt with Stan Gavin, an owner of Southeast Equipment, Inc., during and after the purchase. Mr. Newmaster requested delivery, and delivery of the machine was made on May 15, 1978. The machine was new but had been demonstrated for less than an hour for another potential purchaser. These facts were related to plaintiff by Mr. Gavin and the plaintiff was advised that the warranty would be in effect from the date of delivery.

Plaintiff took delivery of the Powr-Till Seeder and he and his

son, Paul Newmaster, tried it near plaintiff's home. They loaded it with sudan grass seed and pulled it with Mr. Newmaster's tractor for a short distance. After pulling the Powr-Till Seeder for approximately 40 feet, plaintiff got down and looked for the sudan grass seed in the furrows. Mr. Newmaster and son, Paul, both concurred and the trial court found that there was an insufficient number of seeds deposited by the machine per foot to secure a proper crop. Paul replaced the rubber seed-drop tubes, lubricated a chain on the machine and discovered that a cutting wheel wobbled. However, the only defect that plaintiff was concerned with was that the tiller deposited too few seeds per foot. Paul sowed from two to three acres with the tiller and later only 1/10 of that acreage produced sudan grass.

After the initial test, Mr. Newmaster never tried to use the tiller again and sowed his ground using a conventional disc and drill.

On May 18, 1978, Mr. Newmaster contacted Mr. Gavin by phone and told him that the tiller did not work properly. Mr. Gavin told plaintiff the warranty was in effect and that he would stop by when he was in the neighborhood and repair the tiller. Mr. Gavin had commitments ahead of plaintiff for repair work. It was near wheat harvest time and he said his other customers were needing his services. Between May 18, 1978, and August 1, 1978, Mr. Newmaster placed calls to either Mr. Gavin's home or to Southeast Implement, Inc., a total of 14 times. The record does not disclose how many times out of those 14 calls plaintiff actually spoke with Mr. Gavin. No repair was attempted and Mr. Newmaster returned the tiller to the defendant near the end of July, 1978.

Although evidence at trial was conflicting as to the date, Mr. Newmaster did advise Mr. Gavin of his intention to revoke the acceptance. The court found the notification occurred on or about July 31, 1978, after the machine had been returned to defendant's place of business. Approximately two and one-half months had elapsed after the first notice to Mr. Gavin of the defect.

On the basis of the evidence it was concluded this Powr-Till Seeder was purchased for the purpose of planting sudan grass seed on some 400 acres of ground in the spring of 1978. The needs of the purchaser dictated that planting be accomplished in April and May. The plaintiff was unable to plant sufficient sudan grass seed with this machine to make a proper stand of grass. The

defective nature of the machine was difficult if not impossible to discover without attempting to use it. Plaintiff and his son attempted adjustment and repair of the machine but to no avail. Rubber hoses, through which the seed was supposed to pass, were rotted and had to be replaced. There was evidence that, because of the inherent nature of these rubber hoses, replacement may have been required on an annual basis. The buyer could and did reasonably assume the seller would cure the defective condition within a reasonable time.

The seller was notified of the defect three days after buyer received delivery and accepted the machine. Repeated requests were made to have seller service and repair the machine. Nothing was done and no service was attempted by seller for approximately two and one half months. Then the machine was returned to the seller and demand was made for a refund of the purchase price.

One policy of the UCC is to encourage the parties to work out their differences in order to minimize losses resulting from defective performance. White & Summers, Uniform Commercial Code § 8-2, p. 299, n. 23 (2nd ed. 1980). When a tender has been accepted the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy. K.S.A. 84-2-607(3)(*a*). This notice requirement of the code fits in with 84-2-608(2) which requires notification of revocation of acceptance within a reasonable time.

In White & Summers § 11-10, p. 421, the authors point out the first and most important reason for requiring notice is to enable the seller to make adjustments or replacements or to suggest opportunities for care to the end of minimizing the buyer's loss and reducing the seller's own liability to the buyer.

Although the following cases were prior to passage of the UCC, see *Steele v. J. I. Case Co.,* 197 Kan. 554, Syl. ¶ 1, 419 P.2d 902 (1966), where it was said the buyer is not required to allow seller to tinker with a defective machine indefinitely to comply with a warranty; and *Allen v. Brown,* 181 Kan. 301, 308, 310 P.2d 923 (1957), where it was held the seller's liability does not attach for a breach of warranty until he or she has a reasonable opportunity to remedy defects.

The code provides:

"Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement." K.S.A. 84-1-203.

"What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." K.S.A. 84-1-204(2).

So, it appears any attempt to repair defects should be allowed, if attempted within a reasonable time after notice of nonconformity. In *McGilbray v. Scholfield Winnebago, Inc.,* 221 Kan. 605, revocation of acceptance was not permitted but it is noteworthy the repeated repairs by the seller were of a minor nature which did not prevent the purchaser from making use of the vehicle. The vehicle was driven 8700 miles during the 50 weeks plaintiff had owned it. In our present case two and one-half months was surely a reasonable time in which to allow a cure or repair of defects.

Summarizing the present case, plaintiff gave notice of nonconformity three days after tender had been accepted. This was within a reasonable time as required by K.S.A. 84-2-607(3)(*a*). The defects could not have been discovered without using the machine. Buyer mitigated his damages by using another implement to sow the sudan grass seed. See K.S.A. 84-2-711(1)(*a*). He notified seller and allowed a reasonable time for seller to effect repairs. There was substantial impairment in the value to the buyer. 84-2-608(1). When no repairs were made by the seller for a period of over two months the time for sowing sudan grass seed had passed. Buyer then gave notice of revocation of acceptance. 84-2-608(2). Buyer appears to have justifiably revoked acceptance and was therefore entitled to recover the purchase price. 84-2-711(1).

Judgment affirmed.