No. 53,947

B. STEVEN BLACK, *Appellee,* v. DON SCHMID MOTOR, INC., *Appellant,* v. PEUGEOT MOTORS OF AMERICA, INC., *Appellee,* v. NATIONAL BANK OF WICHITA, *Intervenor.*

(657 P.2d 517)

Opinion filed January 14, 1983.

*Paul Arabia,* of Wichita, argued the cause, and *Larry Linn,* of Wichita, was with him on the brief for the appellant.

*C. Robert Bell,* of C. Robert Bell, P.A., of Wichita, argued the cause and was on the brief for the appellee B. Steven Black.

*Ron Campbell,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause and was on the brief for the appellee Peugeot Motors of America, Inc.

The opinion of the court was delivered by

SCHROEDER, C.J.: This action was filed by B. Steven Black (plaintiff-appellee) against Don Schmid Motor, Inc. (defendant-appellant), hereinafter referred to as Schmid, seeking to revoke acceptance of a 1977 Peugeot automobile purchased from Schmid for breach of express and implied warranties. In addition to recovery of the purchase price and consequential damages, the plaintiff sought damages under the Magnuson-Moss Federal Warranty Act, 15 U.S.C. § 2301 *et seq.,* and the Kansas Consumer Protection Act, K.S.A. 50-623 *et seq.* Schmid timely filed a third-party action against its seller, Peugeot Motors of America, Inc. (third-party defendant-appellee), seeking indemnification for any judgment against Schmid. The jury found the plaintiff was entitled to revoke acceptance of the automobile and recover the purchase price plus $3,471.15 in consequential damages. The jury further found that Peugeot was not liable to Schmid for any part of the judgment awarded to the plaintiff. Numerous trial errors are asserted by Schmid on appeal.

Initially the following facts are pertinent. In February 1978 the plaintiff entered into negotiations with the defendant for the purchase of a 1977 Peugeot automobile. The care had previously

been driven by a Peugeot factory representative and had 22,967 miles registered on it. A salesman for Schmid told the plaintiff that because the car had been driven by a representative of Peugeot and had been properly maintained during that time, the car would be warranted as if new and would be given a standard "12 months or 12,000 mile" warranty. The sales order for the car, signed by a sales manager for Schmid, stated "Warranty to 2-16-79 or twelve thousand miles whichever comes first." The plaintiff purchased the car on February 22, 1978, for $8,028.85.

Within a few short weeks the plaintiff began to experience the first of many problems with the car. He noticed that the transmission was leaking fluid and returned the car to Schmid to have the leak repaired. They indicated a small leak was found and had been fixed. A short time later the plaintiff noticed the transmission was again leaking and the transmission made noise when turning corners. The plaintiff again took the car to Schmid for repairs and assumed the problems had been fixed.

A couple of weeks later the plaintiff noticed the leak in the transmission was worse. In addition, the accelerator would stick when the car was driven over 40 miles per hour, the radio began to malfunction, and the air conditioner would leak cold water when the car turned corners. The plaintiff took the car to Schmid and talked to a Schmid salesman about these problems. When the plaintiff went to retrieve the car two or three days later the car would not accelerate when the plaintiff pressed on the gas pedal. It was discovered that some linkage on the accelerator had not been reconnected. While driving home the plaintiff discovered that the problems had not been repaired; the car still accelerated by itself and the transmission still made noises. When he arrived at home the plaintiff called Mr. Don Schmid to express his anger over the continued failure of Schmid to repair the car. Mr. Schmid told the plaintiff that he had a business to run, that mechanics were expensive and hard to find, and that he did not have time to talk to every dissatisfied customer.

In addition to the persisting problems with the transmission, radio and accelerator, other problems emerged. The thermostat for the air conditioner did not work and a warning light for the exhaust gas recirculating system (ERG) on the dashboard stayed on all the time. For the fourth time the plaintiff took the car to Schmid with a list of these problems. The service writers "got a

little angry" with him because the car had been brought in so often. The plaintiff told the service personnel that he had been told the transmission sounded like it did not have adequate fluid in it. However, when Schmid's employees attempted to check the fluid they could not find the transmission dipstick and had to be shown where it was by the plaintiff.

The car remained at Schmid's for several days. The plaintiff was told that they were having trouble finding out what the problem was with the EGR light and were checking with Peugeot about it. When the plaintiff picked the car up he was told everything had been fixed except the radio, which was not covered by warranty. Much to the plaintiff's chagrin, he again realized none of the problems had been corrected. When he arrived home he noticed the inside car lights did not come on and discovered that a group of wires had been pulled out of a box under the dashboard. The transmission leak was getting much worse and the plaintiff resorted to carrying transmission fluid in the trunk of the car. The plaintiff testified that every time he added fluid the transmission would be empty again and would need to be refilled within a day or two. The problems with the radio and air conditioner also continued.

In July 1978, five months after the car was purchased, the plaintiff took it to Schmid to be repaired for the fifth time. He left a list of all the problems he was having with the car. Three or four days later the plaintiff was told the car was ready. While driving the car back to work the clutch on the air conditioner fell out of the car onto the highway. Upon arriving at work the plaintiff called his attorney. He testified he has not driven the car since. This action for revocation of acceptance was subsequently filed. Conflicting evidence was presented indicating the plaintiff had driven the car between 5,300 and 7,000 miles since purchasing it. Additional evidence will be discussed as it becomes necessary.

The appellant first contends that the evidence presented was insufficient to support the jury's determination that the plaintiff was entitled to revoke his acceptance of the Peugeot automobile. Revocation of acceptance is a remedy provided by K.S..A. 84-2-608 which allows a buyer to rescind his purchase of defective or nonconforming goods. K.S.A. 84-2-608 reads:

"(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

"(*a*) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

"(*b*) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

"(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them."

A buyer may only revoke acceptance where the nonconformity of the goods substantially impairs the value of the goods to the buyer. See Rasor, Kansas Law of Sales § 10-3 (1981). In *McGilbray v. Scholfield Winnebago, Inc.,* 221 Kan. 605, Syl. ¶ 1, 561 P.2d 832 (1977), this court held:

"The purchaser of a motor vehicle who seeks to enforce a revocation of acceptance pursuant to K.S.A. 84-2-608 must establish (1) the nonconformity of the vehicle, (2) the needs and circumstances of the purchaser, and (3) that the nonconformity in fact substantially impairs the value of the vehicle to the purchaser."

See also *Newmaster v. Southeast Equipment, Inc.,* 231 Kan. 466, 646 P.2d 488 (1982). The appellant contends that *no* evidence was presented by the plaintiff concerning his particular needs and circumstances, rendering it impossible for the trier of fact to determine whether any nonconformity of the goods substantially impaired the value of the automobile to the plaintiff.

This point is without merit. Nonconformity, the needs and circumstances of the purchaser and substantial impairment of value to a purchaser are all issues to be determined by a trier of fact. *McGilbray,* 221 Kan. 605, Syl. ¶ 2. The needs and circumstances of the buyer is a subjective question, whereas the inquiry whether the nonconformity in fact substantially impairs the value to the buyer is an objective question and requires evidence from which it can be inferred that the plaintiff's needs were not met because of the nonconformity. 221 Kan. at 609. A jury is entitled to draw all reasonable inferences of fact from the evidence presented, *State v. Fenton,* 228 Kan. 658, 666, 620 P.2d 813 (1980), and jurors have the right to use that knowledge and experience which they possess in common with men in general about a matter concerning which a witness has testified. *Noland*

*v. Sears, Roebuck & Company,* 207 Kan. 72, 76, 483 P.2d 1029 (1971).

Admittedly, the plaintiff did not testify expressly concerning his needs and circumstances with respect to his purchase or use of the automobile, or what the value of the Peugeot to the plaintiff would have been had the car conformed to the terms of the contract. However, to sustain the appellant's point would require this court and a jury of average intelligence to ignore the obvious use and purpose of an automobile for the plaintiff. The evidence showed that the car had been driven between 5,300 and 7,000 miles in the five months the plaintiff was able to use it. The plaintiff testified he had to purchase another car to replace the Peugeot. On at least one occasion the plaintiff had to rent a car when the Peugeot was being repaired. The plaintiff was employed in two jobs at the time, one as a computer operator and another as a computer consultant. The plaintiff testified he often was required to miss work when he needed to have the car repaired because of the time involved in taking the car to Schmid and in obtaining transportation elsewhere. The plaintiff estimated that he had spent approximately 150 hours of his time in his efforts to have the car repaired, which, when multiplied by his hourly wage, amounted to $1,400 in lost earnings.

There was abundant evidence from which the jury could infer that the Peugeot, like most cars, was relied on by the plaintiff for his means of transportation to and from work on a daily basis, and that he needed dependable transportation for this purpose. We cannot accept the rigid and narrow position taken by the appellant that *no* evidence was presented from which the jury could infer the specific needs and circumstances of the plaintiff and what the value of the car would have been to him had it conformed to the contract. It was possible, therefore, for the jury to determine whether the defects in the car substantially impaired its value to the plaintiff.

The appellant further contends that acceptance of the car was not revoked before a substantial change in the condition of the car occurred, as required by K.S.A. 84-2-608(2), because the car had been driven 7,000 miles prior to attempted revocation. What constitutes "substantial change" is a question of fact. The jury was properly instructed that the plaintiff must prove "that the revocation occurred before there was a substantial change in the

condition of the automobile, which was not caused by the defective condition of said automobile."

A general verdict resolves all controverted issues in favor of the prevailing party. *Byers v. Hesston Appliance, Inc.*, 212 Kan. 125, 130, 509 P.2d 1151 (1973). A finding that acceptance of the car had been revoked before a substantial change had occurred was implicit in the jury's verdict.

In *McGilbray* it was held the value of a motor home to the buyer had not been substantially impaired where the defects were minor, all defects had been repaired by the seller, and the plaintiff had not been prevented from taking the vehicle on several trips and had driven the vehicle 8,700 miles during the 50 weeks he owned it. The court emphasized that other cases finding the value of a vehicle to be substantially impaired were distinguishable because in each case the seller had failed to satisfactorily repair a major defect in the vehicle. 221 Kan. at 610-11. The defendant in *McGilbray* had remedied all defects brought to its attention by the buyer.

In *Newmaster v. Southeast Equipment, Inc.*, 231 Kan. at 470-71, the failure to repair defects was again emphasized as the key factor in the court's decision. There the plaintiff was permitted to revoke his acceptance of a sower/tiller where the seller was notified of the defect in the machine three days after delivery and two and one-half months later the machine was returned because the seller had failed to make any attempt to repair the machine after repeated requests to do so.

Numerous cases from other jurisdictions have discussed the substantial impairment requirement for revocation of goods under § 2-608 of the Uniform Commercial Code. See, *e.g.*, Annot., What Constitutes "Substantial Impairment" Entitling Buyer to Revoke his Acceptance of Goods Under UCC § 2-608(1), 98 A.L.R.3d 1183. Many cases have permitted a dissatisfied purchaser to revoke acceptance of a motor vehicle where the seller has repeatedly failed to repair defects. Typical of these cases is *Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (Minn. 1977), which involves facts very similar to those in the instant case. The plaintiff purchased a Saab automobile from the defendant and numerous problems began to emerge almost immediately. Among other minor problems, a rattle developed under the dashboard, the seatbelt warning system would activate without cause, the accelerator would stick, the engine would

continue to run after the key was removed, the temperature gauge registered "hot," and five months after the purchase the car began to stall repeatedly. The plaintiff took the car to the seller and another Saab dealer several times for repairs. In an attempt to solve the problem with the seatbelt warning device a front seat was removed and a used seat temporarily installed which remained that way until the plaintiff revoked acceptance of the car several months later. Because of continued stalling the car had to be towed to the dealership several times and often the car would remain at the dealership several weeks for repairs. Most of the minor defects described above continued to persist. The plaintiff revoked acceptance nine months after the purchase and had driven the car 6,300 miles.

In holding the defects substantially impaired the value of the Saab to the plaintiff the court in *Durfee,* 262 N.W.2d at 355, quoted from *Stofman v. Keenan Motors, Inc.,* 63 Pa. D. & C.2d 56, 59, 14 U.C.C. Rep. Serv. 1252 (1973):

"The question we must consider is just how long the buyer must wait and how many unfulfilled promises may be made before he is entitled to revoke his acceptance of an automobile and be returned the purchase price. Our sympathies lie with those who repeatedly return their cars for repairs or service, then get them back in almost the same condition as when the complaints were originally registered. Sympathies aside, the law, ever just, provides a remedy for the situation where such a purchaser seeks to revoke his acceptance after receipt of and payment for the goods purchased."

The court further went on to note that a seller does not have unlimited time to deliver conforming goods; therefore, the failure to repair could result in substantial impairment even if the defects could have been repaired.

A similar conclusion was reached in *Ford Motor Credit Co. v. Harper,* 671 F.2d 1117 (8th Cir. 1982), where the buyer had purchased a four-wheel-drive tractor to use on his farm during muddy times of the year. The tractor engine continued to stall and repeated efforts by the seller to repair it were unsuccessful. As a result the buyer was unable to use the tractor during the muddy periods of the year and revoked acceptance seventeen months after the purchase. The court had no difficulty finding that factory related defects and the inexpert attempts at repair and maintenance by the seller established a nonconformity under the contract which substantially impaired its value to the buyer. 671 F.2d at 1124.

This court likewise has no difficulty finding in the instant case, based upon the evidence presented by the plaintiff, that the Peugeot automobile did not conform to the contract and that this nonconformity substantially impaired its value to the plaintiff. Nonconformity "includes not only breaches of warranties but also any failure of the seller to perform according to his obligations under the contract." U.C.C. § 2-714, comment 2. The test for substantial impairment is, after all, a common sense perception. *Ford Motor Credit Co. v. Harper,* 671 F.2d at 1124. After five attempts by the plaintiff to have the car repaired, most of the minor defects and the leak in the transmission continued to exist. In addition, the air conditioner clutch fell out of the car onto the highway while the plaintiff was driving to work after having had the car serviced and the air conditioner worked on. In order to drive the car the plaintiff was forced to daily check and add transmission fluid. In this condition the car was of questionable value to the plaintiff. The evidence supports the jury's verdict that the plaintiff was justified in revoking his acceptance of the Peugeot automobile and was entitled to the return of his purchase price.

The appellant next contends the plaintiff failed to present sufficient evidence to establish a breach of the implied warranty of merchantability under K.S.A. 84-2-314, and that such failure was fatal to the plaintiff's cause of action for revocation of acceptance. The plaintiff premised his action for revocation upon the defendant's breach of the implied warranty of merchantability and express warranty. The general verdict forms submitted to the jury provided that the jury could either find the plaintiff was entitled to revoke his acceptance and recover the purchase price and consequential damages, or, if revocation was not allowed, the plaintiff could recover for breach of the warranties. Instructions were given on implied warranty of merchantability, express warranty, damages for breach, and revocation of acceptance. The appellant claims the trial court erred in denying its motion for a directed verdict or dismissing the plaintiff's action for breach of implied warranty of merchantability because *no* evidence was presented by the plaintiff regarding (1) the ordinary purpose for which a 1977 Peugeot is used, (2) the expectations of the plaintiff as to a car with 22,967 miles on it, and (3) that the defect existed at the time it left Schmid's control.

To establish a breach of the implied warranty of merchantability under 84-2-314(2)(*c*) a buyer must prove first, the ordinary purpose of the type of goods involved, and second, the particular goods sold were not fit for that purpose. Kansas case law has interpreted this to mean that the buyer must show the goods were defective and the defect existed at the time of the sale. Rasor, Kansas Law of Sales § 9-2. See, *e.g., Querry v. Montgomery Ward & Co., Inc.,* 217 Kan. 104, 109, 535 P.2d 928 (1975).

The contention that no evidence was presented regarding the ordinary purpose of a 1977 Peugeot with 22,967 miles on it, and what the plaintiff's expectations were regarding the car, asks the court to again ignore the obvious. The plaintiff testified he believed he was buying a new car and he was told the car would be warranted as new. The plaintiff testified he was forced to miss work because of the problems with the car. He obviously drove the car to and from work on a daily basis and expected the car to provide dependable transportation for that purpose. In *International Petroleum Services, Inc. v. S & N Well Service, Inc.,* 230 Kan. 452, 454, 639 P.2d 29 (1982), the court recognized that under the implied warranty of merchantability set forth in 84-2-314 an ordinary buyer in a normal commercial transaction has a right to expect that the goods purchased will not turn out to be completely worthless, but on the other hand cannot reasonably expect that those goods will be the finest of all possible goods of that kind.

A claim for breach of implied warranty may be proved by circumstantial evidence. *Butterfield v. Pepsi-Cola Bottling Co.,* 210 Kan. 123, 126, 499 P.2d 539 (1972). On a motion for a directed verdict all facts and inferences reasonably to be drawn from the evidence must be resolved in favor of the party against whom the ruling is sought and if the evidence is such that reasonable minds could reach different conclusions thereon, the motion should be denied. *Lemley v. Penner,* 230 Kan. 25, 27, 630 P.2d 1086 (1981). The jury could have inferred from the evidence presented the plaintiff's reasonable expectations as to the use of the Peugeot. The jury could also have found that the defect existed when the car left Schmid's control. For these reasons the trial court did not err in submitting this issue to the jury under proper instructions.

Several points are raised concerning the express new car warranty of "twelve months or 12,000 miles" extended to the plaintiff. Initially the appellant contends the trial court erred in ad-

mitting evidence regarding the express new car warranty and instructing the jury on breach of express warranty because a claim for breach of express warranty was not contained in the pretrial order.

In his original petition the plaintiff stated a claim for breach of implied warranty of merchantability as the basis of his claim for revocation of acceptance. In an amended petition the plaintiff additionally alleged Schmid had breached the express warranty extended to him that the automobile "would be free from defects in material and workmanship for a period of one (1) year from the date of purchase or 12,000 miles after purchase, whichever came first." The pretrial order, drafted by counsel for Schmid, stated:

"In the course of selling the automobile to the Plaintiff, the Defendant warranted to the Plaintiff that the vehicle was of a quality which was at least fit for the ordinary purposes for which automobiles are used, and in all respects was of merchantable quality. The plaintiff relied upon the implied warranty of merchantability."

The trial court ruled that this paragraph encompassed claims for breach of both express and implied warranties.

This court has often held that the purpose of the pretrial order is to define and clarify the issues, and when entered pursuant to K.S.A. 60-216, has the full force and effect of other orders of the court and controls the subsequent course of trial unless modified to prevent manifest injustice. See *Country Club Home, Inc. v. Harder,* 228 Kan. 756, 762, 620 P.2d 1140, *modified* 228 Kan. 802 (1980); *Dold v. Sherow,* 220 Kan. 350, 353, 552 P.2d 945 (1976); *Kleibrink v. Missouri-Kansas-Texas Railroad Co.,* 224 Kan. 437, 441-42, 581 P.2d 372 (1978). Large discretionary power is granted to the trial court in permitting or refusing modification and amendment of the issues outlined in a pretrial order. *Frevele v. McAloon,* 222 Kan. 295, 298, 564 P.2d 508 (1977); *Tillotson v. Abbott,* 205 Kan. 706, 709, 472 P.2d 240 (1970); K.S.A. 60-216.

Regarding the provisions of the corresponding Federal Rule, Fed. R. Civ. Proc. 16, 6 Wright & Miller, Federal Practice and Procedure, Civil § 1527, 608-10, states:

"Although federal judges generally recognize the binding effect of the pretrial order, this does not mean that it is rigidly and pointlessly adhered to at trial. The application of preclusion always is viewed as a matter of judicial discretion. Thus, in the absence of an abuse of that discretion, it is not error for the court to permit the introduction of evidence or to give instructions on issues beyond the scope of the order or to hear witnesses not listed in accordance with the court's order. In

addition to allowing matter to be introduced that is outside the pretrial order in appropriate cases, courts have held that the order should be construed liberally so that it covers any of the possible legal or factual theories that might be embraced by its language. Even if the pretrial order cannot be interpreted to apply to the issue that is challenged as being outside its terms, relief still may be available because Rule 16 explicitly provides that the order may be modified to 'prevent manifest injustice.' "

In view of the policy allowing liberal construction of pretrial orders and the broad discretionary power placed in the trial court over modification of pretrial orders, we do not believe the trial court erred in allowing the admission of evidence and instructing the jury concerning express warranty. The appellant Schmid, whose attorney drafted the pretrial order, was fully aware the plaintiff was relying on breach of both express and implied warranties in his action for revocation. Certainly no surprise can be claimed, and the appellant has not indicated in what way he was prejudiced by the admission of this evidence, other than by an unfavorable jury verdict. Under the circumstances presented here the trial court did not abuse its discretion by construing the language contained in the pretrial order to embrace a claim for breach of express warranty.

The appellant further contends the trial court erred in denying Schmid's motion for a directed verdict on the plaintiff's claim for breach of express warranty. It is Schmid's position that the express new car warranty noted on the purchase order was in fact a manufacturer's warranty extended by Peugeot and that Schmid merely relayed the warranty to the plaintiff. With the exception of the notation indicating a warranty on the purchase order, Schmid maintains the record is "totally barren" of any evidence in support of the extension of an express warranty by Schmid to the plaintiff and the plaintiff "clearly understood" the express warranty came from Peugeot rather than from Schmid.

The evidence in the record concerning the express warranty comes entirely from the plaintiff's testimony. Neither Schmid nor Peugeot presented evidence concerning Peugeot's alleged practice of extending a manufacturer's new car warranty to purchasers of cars which previously had been driven by Peugeot factory representatives. The plaintiff testified extensively concerning his understanding about the express warranty. At various times the plaintiff testified:

"A. . . . . [I]n other words, one was a brand new car, the other one had been

driven by . . . the Peugeot representative that visited Don Schmid as the representative of Peugeot. And, that the car was — had been properly maintained by the representative; in other words, normal warranty work, normal checkups, normal service had been performed, and that Don Schmid and Peugeot would warrant the car just as if I was buying the red car . . . . And I made sure that I understood what Mr. Rydjord was saying, was that it didn't matter which car I bought, I still got the same service and still got the same warranty.

. . . .
"Q. Did John Rydjord, your salesman, tell you that Don Schmid guaranteed this car for twelve months or twelve thousand miles?
"A. . . . I was told both. I was told that Don Schmid was the authorized dealer for Peugeot and that they would — first of all, that I would receive a warranty from Peugeot. That is why it states on this piece of paper that there is a warranty, because I had nothing to go on. . . . I was told that this would keep me going until the warranty arrived from Peugeot and that the warranty that arrived from Peugeot would be the same as the warranty card you get when you buy a Ford or Chevy or any car, that you can take to any authorized dealer and have the warranty work done.
"Q. So, you were to receive a Peugeot warranty?
"A. Yes.

. . . .
"Q. Well, did he say it had a Don Schmid warranty, a standard Peugeot warranty —
"A. Well, like I said before, he told me that it was . . . that the car had a full warranty of twelve months — or twelve thousand miles and one year, or twelve months, which was the standard Peugeot warranty; that Don Schmid would administer any warranty work that needed to be done and stand behind the warranty; and that I would receive in a very short period of time, because it was a car driven by a Peugeot representative, a new warranty plate, or record, from Peugeot that could be used at any dealership in the United States that was an authorized Peugeot dealership."

The plaintiff further testified as follows concerning the "warranty card" he was to receive from Peugeot which would serve to prove the car was under warranty:

"A. . . . I tried going through Don Schmid to get the warranty card. I tried calling Peugeot to get the warranty card. And if I asked Don Schmid, Don Schmid said we're talking to Peugeot; and when I called Peugeot, they said, we're working on it. But, I never received it."

As stated before, on a motion for a directed verdict all facts and inferences reasonably to be drawn from the evidence must be resolved in favor of the party against whom the ruling is sought. We find that evidence was presented from which the jury could have inferred that an express warranty was extended to the plaintiff from Schmid.

The appellant next contends the trial court erred in submitting

Schmid's claim for indemnity against Peugeot to the jury. At the close of the evidence, Schmid proffered an instruction concerning Schmid's claim for breach of implied warranty of merchantability against Peugeot and the measurement of damages for breach of an implied warranty. In support of the proffered instruction Schmid relied in part on K.S.A. 84-2-607(5), which states in part:

"Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over

"(a) he may give his seller written notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound."

The following discussion then took place between the court and the parties:

"MR. METZGER [attorney for Schmid]: Okay. 84-2-607(5) is the vouching in statute under the Uniform Commercial Code which places a duty on Peugeot to come in and defend us for those actions in which they are liable over to us.

"THE COURT: Under their warranty?

"MR. METZGER: Under their warranty. If they fail to do that, the statute then says that they are bound by any questions of common fact.

. . . .

"THE COURT: What do you mean by 'bound by issues of common fact'?

"MR. CAMPBELL [attorney for Peugeot Motors]: The issues have been taken care of by the verdict form and by the instruction on the warranties and merchantability. You've already instructed that it applies to me, too.

"THE COURT: Right.

"MR. CAMPBELL: I just think that is going to confuse the jury.

"THE COURT: It looks to me like it would, too, because it has confused me about what you mean by 'issues of common fact' and 'bound by'. Whether the jury is going to think —

"MR. METZGER: It very well may be, Your Honor, that is actually a question of law for Your Honor to decide because what — it's a statutory codification of indemnification.

"THE COURT: We will work on that after a verdict comes in, though.

"MR. METZGER: That would be fine with me. I just didn't want to waive my ability to argue that we should, irregardless of the jury verdict, we should be indemnified afterward.

"THE COURT: I'll deny that at this time but leave it open for argument after the verdict comes in."

The verdict forms submitted to the jury included one for the jury to determine the amount of damages Schmid was entitled to recover from Peugeot. The jury found that Schmid was not

entitled to any damages from Peugeot. Following the trial the appellant filed a motion for the court to determine the indemnity issue between Schmid and Peugeot. The trial court refused to entertain the motion on the ground that it had submitted the issue to the jury and it had been determined at that time. The appellant claims the trial court reserved the legal question of indemnification for determination by the court after the verdict was returned.

Close examination of the dialogue reproduced above and the record reveals that the issue reserved by the trial court was the construction of the words "bound by issues of common fact," referring to K.S.A. 84-2-607(5), and not, as the appellant contends, the issue of the amount of damages Schmid was entitled to recover from Peugeot for breach of the implied warranty of merchantability. Other evidence in the record also bears out this conclusion. The defendant Peugeot presented evidence to the effect that all problems with the Peugeot automobile were the result of negligent and careless repair work by Schmid, rather than manufacturing defects in the car. In addition to the previously mentioned verdict forms submitted to the jury, numerous instructions were given relating to Peugeot Motors' liability to Schmid for damages for breach of implied warranty of merchantability. Instructions were given concerning Schmid's burden of proof on the issue of its damages against Peugeot Motors; Peugeot's liability to Schmid for inherent defects in the vehicle, but not for Schmid's failure to repair the vehicle; a manufacturer's liability to a person who is damaged by breach of implied warranty; Schmid's claim that Peugeot was liable for the defects in the automobile; the implied warranty created by Peugeot when it sells cars to Schmid; and Peugeot's role as seller of automobiles to Schmid.

The appellant did not object to any of these instructions or the verdict forms submitted to the jury. Under K.S.A. 60-251(*b*) where no objection is made to an instruction it becomes the law of the case unless clearly erroneous. *Iseman v. Kansas Gas & Electric Co.,* 222 Kan. 644, 649, 567 P.2d 856 (1977); *Snyder v. City of Concordia,* 182 Kan. 268, 272, 320 P.2d 820 (1958). The appellant does not contend on appeal that any of these instructions are clearly erroneous. It appears that the appellant seeks two opportunities to have Peugeot's liability to it determined. The appellant acquiesced in the instructions regarding Peugeot's liability,

which were submitted to the jury and became the law of the case, and now it claims this issue should have been determined by the court as a matter of law. We find the issue of Peugeot's liability to Schmid for damages for breach of implied warranty was submitted to and determined by the jury.

In arguing its right to indemnification from Peugeot Motors, the appellant has confused its right to "vouch in" a party liable over to him under K.S.A. 84-2-607(5) with its right to recover indemnity from Peugeot based upon Peugeot's breach of implied warranty of merchantability. Where a buyer pursues the provisions of this statute, it merely binds the vouchee to "any determination of fact common to the two litigants." This avoids the necessity of relitigating the issues of liability to the plaintiff. *Uniroyal, Inc. v. Chambers Gasket & Mfg. Co.,* 177 Ind. App. 508, 521, 380 N.E.2d 571 (1978). (We note that while Peugeot Motors participated in this action it defended only its liability to Schmid and did not defend Schmid's liability to the plaintiff.) The mere finding that Schmid was liable to the plaintiff does not, without more, entitle Schmid to indemnity from Peugeot under K.S.A. 84-2-607(5). 177 Ind. App. at 524. A question of fact was presented to the jury as to whether or not Peugeot breached its implied warranty of merchantability to Schmid making it "answerable over" to Schmid for Schmid's liability to the plaintiff.

Schmid steadfastly maintains it sold the vehicle to the plaintiff in the exact condition it was in when received from Peugeot; and thus, any defects in the vehicle at the time of the sale to the plaintiff were present when the car was sold to Schmid by Peugeot. On the other hand, Peugeot contends Schmid was found liable to the plaintiff for failure to repair the automobile rather than for defects in the vehicle.

A right of indemnity exists where a party is compelled to pay damages that rightfully should have been paid by another party. 41 Am. Jur. 2d, Indemnity § 20. Thus, a seller that is liable for damages to a purchaser of defective goods may seek indemnity from the manufacturer where the damages were the proximate result of the manufacturer's breach of warranty. Where, however, the damages result from the seller's failure or refusal to repair the goods rather than any manufacturing defect in the goods, the seller's right to indemnity against the manufacturer for breach of warranty is barred. See *Schroeder v. Fageol Motors, Inc.,* 12

Wash. App. 161, 170, 528 P.2d 992 (1974), *modified* 86 Wash. 2d 256 (1975); *Massingale v. Northwest Cortez,* 27 Wash. App. 749, Syl. ¶ 6, 620 P.2d 1009 (1980).

A general verdict resolves all controverted issues in favor of the prevailing party and imports a finding on all issues in a case which are not inconsistent with answers to special questions submitted. *Byers v. Hesston Appliance, Inc.,* 212 Kan. 125, 130, 509 P.2d 1151 (1973). Peugeot was a prevailing party in this action. The jury was properly instructed that "Peugeot Motors is liable to Don Schmid Motors for inherent defects in the vehicle, but not Don Schmid's failure to properly repair the vehicle." A finding by the jury that the plaintiff's damages were caused by Schmid's failure to repair the car rather than defects in the car was inherent in the verdict returned by the jury specifically finding Peugeot not to be liable to Schmid for the plaintiff's damages.

Schmid argues in the alternative that if the issue of indemnification was properly submitted to the jury it was prejudicial for the trial court to refuse Schmid's proffered instruction as the instructions given by the trial court, taken as a whole, did not adequately state the law of indemnification. The appellant proffered the following instruction:

"Don Schmid Motors, Inc., has asserted a claim against Peugeot Motors of America, Inc., based upon an alleged breach of the implied warranty of merchantability. As you were informed in an earlier instruction, Don Schmid Motors, Inc., is not only a dealer/merchant but is also a buyer and Peugeot Motors of America, Inc., is the seller/merchant of Don Schmid Motors, Inc. Therefore, if you find that Peugeot Motors of America, Inc., breached its implied warranty to Don Schmid Motors, Inc., then Don Schmid Motors, Inc., is entitled to recover damages from Peugeot Motors of America. Said damages are to be measured as follows:

"1) The difference in value of the automobile in question at the time it was purchased as said automobile was warranted minus its actual value, and

"2) Any loss resulting from the general or particular needs of Don Schmid Motors, Inc., of which Peugeot Motors of America, Inc., had reason to know of including attorney's fees which could not be reasonably avoided, and of which Peugeot Motors of America, Inc., breach was a proximate cause."

Error cannot be predicated on the refusal to give an instruction when its substance is adequately covered in other instructions. *Van Hoozer v. Farmers Insurance Exchange,* 219 Kan. 595, 614, 549 P.2d 1354 (1976). Instructions should be general in nature insofar as possible. If they properly and fairly state the law as

applied to the facts in the case when considered as a whole, and if the jury could not reasonably be misled by them, the instructions should be approved on appeal. *Timsah v. General Motors Corp.,* 225 Kan. 305, Syl. ¶ 3, 591 P.2d 154 (1979).

The instruction proffered by Schmid merely restated portions of other instructions given to the jury relating to Peugeot's liability for damages for breach of implied warranty of merchantability. It was not error for the court to submit the indemnity issue to the jury without giving Schmid's proffered instruction.

Schmid additionally complains about the insufficiency of other instructions given by the trial court. We have reviewed the instructions given and find they fairly presented the law as stated in *McGilbray.*

The appellant also complains about Instruction No. 9 given by the trial court regarding breach of express warranty.

The first 4 paragraphs of this instruction were taken from PIK Civ.2d 13.15 (1977), and the appellant concedes it is a correct statement of the law regarding express warranty. The appellant contends, however, the instruction is insufficient because it does not specifically address the issue of whether Schmid or Peugeot Motors extended the express warranty to the plaintiff.

In determining the insufficiency of an instruction the court must focus on whether the jury could reasonably have been misled by it. The determination whether the probable effect of the instruction has been to mislead the jury and whether the error has been prejudicial so as to require reversal depends upon all the circumstances of the case, including a consideration of all the evidence. *Curby v. Ulysses Irrigation Pipe Co., Inc.,* 204 Kan. 456, 462, 464 P.2d 245 (1970). Throughout the trial Schmid emphasized its position that it had not extended an express warranty to the plaintiff, but had merely relayed the warranty extended by Peugeot. The jury was well aware of this position. Under the circumstances of this case we cannot say the jury was misled by the trial court's failure to specifically instruct the jury concerning which party had extended the warranty.

The appellant also complains that the last paragraph of Instruction No. 9, stating that the alleged defect must be present at the time it left the possession of the seller or manufacturer, is an erroneous statement of law for breach of express warranty, although it is an element of proof for breach of implied warranty of

merchantability. However, we have discerned from the record that this paragraph was added to the instruction upon the appellant's express request. While this paragraph was an erroneous statement of law as it relates to breach of express warranty, any misleading of the jury because of it would have been to the appellant's benefit. Certainly the appellant was not prejudiced by it. We hold the jury could not reasonably have been misled by the instruction given and we find no error requiring reversal.

The appellant's final point on appeal concerns the trial court's allowance of attorney's fees to the plaintiff pursuant to the provisions of the Magnuson-Moss Federal Warranty Act, 15 U.S.C. § 2301 *et seq.* Section 2310(d)(2) of 15 U.S.C., provides:

"If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate."

Initially the appellant contends the issue of attorney's fees was outside the scope of the pretrial order. The pretrial order stated the plaintiff sought damages of $7,000 for violation of the Magnuson-Moss Federal Warranty Act. Based on our discussion earlier in this opinion regarding this issue we find this was sufficient to state a claim for attorney's fees under the Act.

The Magnuson-Moss Federal Warranty Act is a limited federal consumer warranty law which applies to manufacturers, sellers and consumers of "consumer products." The Act primarily provides guidelines in connection with written express warranties and in many cases invalidates attempted disclaimers of implied warranties of merchantability. See White and Summers, Uniform Commercial Code § 9-3 (2d ed. 1980); Clark and Davis, *Beefing Up Product Warranties: A New Dimension in Consumer Protection,* 23 Kan. L. Rev. 567, 606-17 (1975). Section 2310(d)(1) provides that a consumer damaged by the failure of a supplier to comply with its obligations under an express or implied warranty may bring a civil action for damages and other legal and equitable relief in any state or federal court.

Following an evidentiary hearing on the issue of attorney's fees the trial court awarded the plaintiff attorney's fees in the amount of $3,000. Section 2310(d)(2) of 15 U.S.C., specifies that an award

of attorney's fees to a prevailing party under the Act is within the discretion of the trial court. See *Trost v. Porreco Motors, Inc.,* 297 Pa. Super. Ct. 393, 397, 443 A.2d 1179 (1982). The trial court did not abuse its discretion in the award of attorney's fees to the plaintiff.

The appellant further contends the trial court erred in refusing to award attorney's fees to Schmid against Peugeot Motors. Cases from other jurisdictions have recognized that attorney's fees can be awarded to consumers but not to retailers against a manufacturer under the Act. See *Nobility Homes, Inc. v. Ballentine,* 386 So. 2d 727, 730-31 (Ala. 1980); *Ventura v. Ford Motor Co.,* 173 N.J. Super. 501, 504, 414 A.2d 611 (1980).

As a retailer buying consumer products for resale from the manufacturer, Schmid is not within the definition of consumer as it is used in the Magnuson-Moss Federal Warranty Act, 15 U.S.C. § 2301(3), and thus is not entitled to recover damages or attorney's fees against Peugeot under the Act. 15 U.S.C. § 2310(d)(2). Furthermore, Schmid was not a prevailing party in this action. The trial court was correct in refusing to grant attorney's fees to Schmid against Peugeot Motors.

The judgment of the lower court is affirmed.